[Cite as *Weigand & Son Corp. v. Matrix Realty Group, Inc.*, 2014-Ohio-2503.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Weigand and Son Corp., dba Paul Davis Restoration & Remodeling of Columbus, | : | |
| | : | |
| Plaintiff-Appellee, | | |
| | : | No. 13AP-836 |
| v. | | (C.P.C. No. 12CV-003253) |
| | : | |
| Matrix Realty Group, Inc., | | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on June 10, 2014

*Heekin & Heekin*, and *Christopher R. Heekin*, for appellee.

*Isaac Wiles Burkholder & Teetor, LLC, Kerry T. Boyle* and *Mark A. Glumac*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Matrix Realty Group, Inc. ("Matrix Realty"), appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, Weigand and Son Corp., dba Paul Davis Restoration & Remodeling of Columbus ("Paul Davis"), on Paul Davis's claim for breach of contract. Because we conclude that there was a genuine issue of material fact regarding whether Matrix Realty was a party to the contract, we reverse.

{¶ 2} This case involves events that occurred following a fire at the Oakbrook Manor apartment complex on August 11, 2011. The fire resulted in damage that displaced residents from approximately 30 apartment units. Oakbrook Manor was owned by an

entity called Wingates, LLC ("Wingates"), which was affiliated with an entity called Matrix Equities, Inc. ("Matrix Equities"). At the time, Edwin LaChappelle ("LaChappelle") was employed as a regional manager for multi-family operations for Matrix Equities. The morning after the fire, LaChappelle arrived at Oakbrook Manor and was met by a representative of Paul Davis, who provided LaChappelle with an "Emergency Repairs Authorization" form. The Emergency Repairs Authorization stated that, by signing the form, the property owner or manager authorized Paul Davis to make emergency repairs in the form of securing the property due to fire damage. Paul Davis's general manager would later testify that securing a property generally included boarding up and blocking off areas that were potentially hazardous until an inspection could be performed.

{¶ 3} LaChappelle sent the Emergency Repairs Authorization form to Vin Grillo ("Grillo"), who was vice-president for multi-family operations for Matrix Equities. Grillo signed the Emergency Repairs Authorization, indicating that he was the property manager. Paul Davis's employees secured the property, which took approximately one to two days. They then proceeded with restoration and repair work that took several additional days. Paul Davis's general manager, Curtis Teets ("Teets"), later testified that the scope and cost of these restoration and repair services were discussed with LaChappelle, who approved the estimates. Teets testified that LaChappelle told the Paul Davis employees not to paint the apartments because a third party would paint the apartments after they were restored. After the work was completed, Paul Davis presented an invoice to Matrix Realty for $69,952.88.

{¶ 4} After Matrix Realty declined to pay the full invoice, Paul Davis filed a complaint asserting claims for breach of contract and unjust enrichment. Matrix Realty was the only defendant named in the complaint. Paul Davis moved for summary judgment, asserting that it was entitled to judgment as a matter of law on its claims. Matrix Realty claimed that it was not a party to the asserted contract and that, therefore, Paul Davis was not entitled to summary judgment. The common pleas court granted Paul Davis's motion for summary judgment, concluding that there were no genuine issues of material fact regarding the existence of a contract, Paul Davis's performance, or Matrix Realty's breach of the contract. The court found that summary judgment was inappropriate with respect to the amount of damages and ordered a hearing on the

amount of damages and attorney fees to which Paul Davis was entitled. Following a hearing, a magistrate determined that Paul Davis was entitled to recover compensatory damages of $69,952.88 and attorney fees of $7,947.50. The common pleas court adopted the magistrate's decision and awarded judgment in favor of Paul Davis for those amounts.

{¶ 5} Matrix Realty appeals from the common pleas court's judgment, assigning two errors for this court's review:

> **Assignment of Error No. 1**: The trial court erred in granting summary judgment for Plaintiff on its breach of contract claim.
>
> **Assignment of Error No. 2**: The trial [court] erred in granting summary judgment for Plaintiff on its unjust enrichment claim.

{¶ 6} We review a grant of summary judgment de novo. *Capella III, L.L.C. v. Wilcox,* 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.,* 93 Ohio St.3d 547, 548 (2001). "De novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." *Holt v. State,* 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9 (internal citations omitted). Summary judgment is appropriate where "the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Capella III* at ¶ 16, citing *Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6. In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the nonmoving party. *Pilz v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8. Therefore, we undertake an independent review to determine whether Paul Davis was entitled to judgment as a matter of law on its claims against Matrix Realty.

{¶ 7} In its first assignment of error, Matrix Realty asserts that the common pleas court erred by granting summary judgment for Paul Davis on the breach of contract claim. Matrix Realty argues that it was not a party to the contract created by the Emergency Repairs Authorization. It further claims that LaChappelle lacked authority to

enter into or expand the scope of any subsequent agreement for restoration or repair services beyond the scope of the Emergency Repairs Authorization.

{¶ 8} The elements of a contract include an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of the object of the contract and the consideration. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16. "In order to have a valid contract, there must be a 'meeting of the minds' as to the essential terms of the contract, such that 'a reasonable person would find that the parties manifested a present intention to be bound by an agreement.' " *State v. Gibson*, 10th Dist. No. 10AP-1047, 2011-Ohio-5614, ¶ 16, quoting *Zelina v. Hillyer*, 165 Ohio App.3d 255, 2005-Ohio-5803, ¶ 12 (9th Dist.). The common pleas court concluded that there were two agreements at issue in this case. The first agreement, defined by the written terms of the Emergency Repairs Authorization form, provided that Paul Davis would secure the property. Further, the court found that there was a second agreement providing that Paul Davis would restore and repair the property. The court concluded that this agreement resulted from discussions in which Paul Davis employees provided estimates for restoration and repair services, and LaChappelle approved the proposed services and prices.

{¶ 9} It is undisputed that Matrix Realty was not expressly named as a party on the Emergency Repairs Authorization. Rather, Grillo signed the form indicating that he was the property manager. LaChappelle subsequently signed a portion of the form indicating that Paul Davis had completed the authorized emergency repairs. The court concluded that, by signing the Emergency Repairs Authorization, Grillo agreed to the terms of that document. With respect to the purported unwritten agreement for restoration and repair services, the court found that LaChappelle acted as Matrix Realty's agent by approving the cost estimates provided by Paul Davis. The court concluded that there was no genuine issue of material fact that Grillo and LaChappelle were actual or apparent agents of Matrix Realty and that, based on the actions of Grillo and LaChappelle, Matrix Realty agreed to be bound by the written terms of the Emergency Repairs Authorization and the unwritten agreement for repair and restoration services.

{¶ 10} "Agency is the relationship that results when one party agrees to another person or entity's acting on its behalf." *Mtge. Network, Inc. v. Ameribanc Mtge. Lending,*

*L.L.C.*, 177 Ohio App.3d 733, 2008-Ohio-4112, ¶ 12 (10th Dist.).  In order for a principal to be bound under a theory of apparent agency, the evidence must demonstrate:  "(1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." *Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570 (1991), syllabus. Under this analysis, it is the acts of the principal, rather than the agent, that must be examined. *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, ¶ 56. *See also Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, ¶ 41 ("Under an apparent-authority analysis, an agent's authority is determined by the acts of the principal rather than by the acts of the agent."). A principal is responsible for the acts of an agent based on apparent authority only where the principal's acts or conduct has created the appearance of authority, not where the agent's own conduct has created the apparent authority. *Master Consol.* at 576-77.

{¶ 11} The evidence presented below indicated that Oakbrook Manor was owned by Wingates. Grillo attested that, at the relevant time, he was executive vice-president for multi-family operations for Matrix Equities and that he had authority to sign a contract on behalf of Wingates. LaChappelle attested that he was a regional manager for multi-family operations for Matrix Equities and that his region included Oakbrook Manor. Both Grillo and LaChappelle attested that Matrix Equities and Wingates were "affiliated" with Matrix Realty; however, there was no further evidence explaining the relationship between these three entities. Likewise, there was no evidence that either Grillo or LaChappelle was an employee of Matrix Realty. Teets testified that LaChappelle provided a business card indicating that he worked for "Matrix." However, it is unclear from the testimony whether this referred to Matrix Equities or Matrix Realty. Teets also testified that he was not present when the Emergency Repairs Authorization form was presented to LaChappelle and that another Paul Davis employee was involved in getting that form signed.

{¶ 12} As explained above, the apparent agency analysis focuses on the actions of the *principal*, not the purported agent. There was little, if any, evidence demonstrating that Matrix Realty held Grillo or LaChappelle out to the public as possessing authority to

enter into contracts on behalf of Matrix Realty. The common pleas court noted that Matrix Realty was named as the client on the cost estimates prepared by Paul Davis and that there was no evidence that LaChappelle or anyone else suggested this was incorrect. Additionally, the trial court noted that, after the work was completed, the chief operating officer of Matrix Realty was involved in discussions about payment of Paul Davis's invoice for the services provided. While this evidence suggests that Matrix Realty may have been aware of the services being provided by Paul Davis, it falls short of demonstrating that Matrix Realty affirmatively held out Grillo or LaChappelle as having authority to enter into contracts on its behalf. In the context of a summary judgment motion by Paul Davis, we are required to resolve all doubts and construe the evidence in favor of Matrix Realty as the nonmoving party. *Pilz* at ¶ 8. Based on the evidence presented below, we conclude that there was a genuine issue of material fact as to whether Grillo or LaChappelle were actual or apparent agents of Matrix Realty with authority to enter into contracts. As a result, there is also a genuine issue of material fact as to whether Matrix Realty was a party to the Emergency Repairs Authorization or any unwritten agreement for repair and restoration. Due to the existence of a genuine issue of material fact regarding one of the essential elements of the purported contracts, Paul Davis is not entitled to summary judgment on its breach of contract claim. *See Am. Outdoor Advertising Co., L.L.C. v. P&S Hotel Group, Ltd.*, 10th Dist. No. 09AP-221, 2009-Ohio-4662, ¶ 39 ("As a genuine issue of material fact remains with regard to Tackett's apparent authority to bind P & S to the agreements, this matter may not be resolved, as a matter of law, by summary judgment, and the trial court erred in doing so.").

{¶ 13} Accordingly, we sustain appellant's first assignment of error.

{¶ 14} In its second assignment of error, Matrix Realty argues that the common pleas court erred by granting summary judgment in favor of Paul Davis on its unjust enrichment claim. In the decision, the court concluded that Paul Davis "would be entitled" to summary judgment as an alternative to its breach of contract claim. (Decision and Entry, 9.) By the express terms of the decision, however, the court only granted summary judgment for Paul Davis on the breach of contract claim. Therefore, the portion of the judgment discussing the unjust enrichment claim is, in effect, an advisory opinion. Because the common pleas court did not grant summary judgment in favor of Paul Davis

on the unjust enrichment claim, this assignment of error is not ripe for review. *See McGrath v. Indiana Ins.*, 11th Dist. No. 2005-L-002, 2006-Ohio-4037, ¶ 14-15 (concluding that certain cross-assignments of error were not ripe for review because they addressed a portion of the trial court's decision that constituted a hypothetical analysis with no bearing on the outcome of the decision and made findings that did not form the basis for the decision).

{¶ 15} Accordingly, we dismiss appellant's second assignment of error as not ripe for review.

{¶ 16} For the foregoing reasons, we sustain appellant's first assignment of error and dismiss appellant's second assignment of error as not ripe for review. We reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed; cause remanded.*

BROWN and O'GRADY, JJ., concur.

_____