[Cite as *You v. Northeast Ohio Med. Univ.*, 2018-Ohio-4838.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Min You, Ph.D., | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-426 |
| v. | : | (Ct. of Cl. No. 2015-00747) |
| Northeast Ohio Medical University, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 6, 2018

**On brief:** *Fan Zhang, LTD*, for appellant. **Argued:** *Fan Zhang*.

**On brief:** *Michael DeWine*, Attorney General, *Velda K. Hofacker*, and *Stacy Hannan*, for appellee. **Argued:** *Stacy Hannan*.

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Min You, Ph.D., appeals the May 17, 2017 decision of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, Northeast Ohio Medical University. For the following reasons, we affirm in part and reverse in part.

**I. Facts and Procedural History**

{¶ 2} This matter arises out of an employment dispute between appellant and appellee. On November 4, 2013, Charles Taylor, Pharm.D., Dean of the College of Pharmacy with appellee, sent appellant a letter ("offer letter") offering her an appointment as department chair at the rank of professor in the Department of Pharmaceutical Sciences. Taylor noted the faculty appointment was tenured. Additionally, Taylor offered appellant a non-paid appointment as associate dean for research within the College of Pharmacy. Finally, as relevant to this matter, Taylor stated in the offer letter: "the College of Pharmacy,

in conjunction with [appellee's] Division of Advancement, will create a process to name and fully endow a distinguished chair/professorship within the College of Pharmacy to which you will be assigned."  (Response to Mot. for Sum. Jgmt., Ex. A at 2, hereinafter "Response.")  On November 11, 2013, appellant signed the offer letter below text which stated, "I hereby confirm my acceptance of the terms of this letter."  (Response, Ex. A at 4.)  Appellant began working for appellee approximately the end of January 2014.

{¶ 3}  In deposition testimony, Taylor stated appellant had multiple performance issues, the most important of which was insubordination.  Specifically, Taylor stated appellant's insubordination arose over a dozen instances in which appellant bypassed appellee's chain of command to communicate directly with appellee's President, Jay A. Gershen, DDS, Ph.D., instead of first raising the matter with Taylor.  According to Taylor, Gershen told him to intervene with appellant, which Taylor did by speaking or writing to appellant regarding her performance more than a dozen times.  According to Taylor, appellant "would agree to change [the] course of [her] behavior, but then she didn't." (Taylor Depo. at 22.)

{¶ 4}  Following these attempts to resolve the issue, on February 11, 2015, Gershen, Taylor, and appellant met to "give feedback and reiterate to please stop that line of communication [to Gershen], and [appellant] refused."  (Taylor Depo. at 19.)

{¶ 5}  Gershen testified in his deposition that he attended the February 11, 2015 meeting with appellant and Taylor in order to "talk with [appellant] about the relationship between the Dean and the Chair with regard to communications, University business, chain of command and so forth." (Gershen Depo. at 13.) At the meeting, Gershen found appellant's behavior to be insubordinate because she pushed Gershen an envelope relating to departmental business.  Gershen told appellant this information should be provided to Taylor first and returned the envelope to appellant.  Appellant disregarded Gershen's instructions and continued to push the envelope to him.

{¶ 6}  Gershen stated he had "a policy that relates to the chain of command that * * * is very clear with regard to the leadership team and the people that report to them." (Gershen Depo. at 9.)  Such policy provided that "people, as it relates to University business, the business of the unit, they need to go to the supervisor and not to the President." (Gershen Depo. at 9-10.)  According to Gershen, appellant acted in an insubordinate manner on several occasions relating to her use of e-mail, including by disregarding a request to stop copying him on e-mails.

{¶ 7} On February 13, 2015, Taylor sent appellant a letter of warning ("warning letter") in which he stated "it is unacceptable for you to directly communicate with the President on the department or collegiate operational matters." (Pltf.'s Ex. C.) Furthermore, Taylor stated he considered appellant's behavior to be "insubordinate" and "[f]ailure to demonstrate immediate and sustained adherence to this directive to not communicate directly with the President, will result in disciplinary action that may include removal as department chair/associate dean." (Pltf.'s Ex. C.) The letter contained a spot for appellant's signature below text which stated "I hereby confirm my understanding and acceptance of the terms of this letter." (Pltf.'s Ex. C.) Taylor stated appellant refused to sign the letter and stated "I reject this." (Taylor Depo. at 25.) Taylor then sent appellant a clarifying communication, and appellant again indicated she did not agree.

{¶ 8} On February 18, 2015, Taylor sent appellant a letter of removal ("removal letter") in which he stated "[c]onsistent with our meeting of February 18, 2015, I regretfully confirm that your administrative appointments as chair of the Department of Pharmaceutical Sciences and associate dean of research for the College of Pharmacy will terminate immediately." (Pltf.'s Ex. C.) Taylor confirmed appellant would remain a tenured professor, but her salary would be reduced consistent with the loss of her administrative appointments. Additionally, Taylor stated appellant was "hereby released from your obligation to engage with the Division of Advancement to fund an endowed chair/professorship within the College of Pharmacy and you are hereby notified that the College will not assign that position to you should one be developed." (Pltf.'s Ex. C.) Taylor stated that the impetus for this letter was the "culmination of all of the different points of communication; the meeting with the President, the warning letter that was rejected by [appellant], my clarification letter asking her to reconsider, and then she rejected that as well." (Taylor Depo. at 30.)

{¶ 9} On February 27, 2015, appellant sent Gershen a document titled "notice of appeal" ("appeal letter") asserting she was appealing Taylor's decision to terminate her appointments. Appellant claimed Taylor's actions were without "any Just Cause" and did not follow the procedures set forth in the faculty bylaws for sanctions and dismissal of faculty. Appellant also claimed she was "protected by the relevant federal and administrative due process laws and corresponding university policies." (Mot. for Sum. Jgmt., Ex. T-1.)

{¶ 10} Appellant testified in her deposition that as a result of the removal letter she lost her endowment. Appellant stated her endowment "ha[d] nothing to do with my administrative duty," but instead related to her "academia rank." (You Depo. at 35.) Appellant stated that "[b]y canceling my endowed professorship I was demoted, academically I was demoted." (You Depo. at 41.)

{¶ 11} Kathryn Chudakoff, controller for appellee and responsible for oversight and management of grants accounting staff, stated in an affidavit that in April 2014 a member of the grants accounting staff informed her about concerns regarding appellant's grants from her former employer which she transferred to appellee. Chudakoff stated that between April and December 2014, the manager of the grants accounting department met with appellant and various other staff members to attempt to resolve these concerns. After being unable to resolve the concerns, Chudakoff reported the matter to Carrie Bast, chief operating officer at appellee, who, in turn, brought the matter to Taylor's attention on December 18, 2014. Following this meeting, Chudakoff stated that a process was instituted to ensure grant compliance. Chudakoff averred that her department's inquiry was a "matter of standard compliance oversight and monitoring." (Chudakoff Aff. at 2.)

{¶ 12} In her affidavit, appellant stated the grants mentioned by Chudakoff were not in existence until August 26, 2014. Appellant denied any irregularities in her grants.

{¶ 13} On August 21, 2015, appellant filed a complaint in the Court of Claims, asserting claims for breach of contract, violation of due process rights, retaliation, and discrimination on the basis of race, gender, and national origin. On March 15, 2016, pursuant to Civ.R. 53, the Court of Claims appointed a magistrate to preside over the proceedings. On April 13, 2016, appellee filed an answer.

{¶ 14} On March 13, 2017, appellee filed a motion for summary judgment. On April 6, 2017, appellant filed a response to the motion for summary judgment, including an affidavit composed by appellant and several attachments. On April 10, 2017, appellee filed a motion for leave to file a reply to appellant's response to the motion for summary judgment. On the same date, appellee filed a reply in support of its motion for summary judgment and a motion to strike the documents attached to appellant's affidavit. On April 14, 2017, appellant filed a reply to appellee's motion to strike. On May 17, 2017, the Court of Claims filed a decision denying appellee's motion to strike and granting appellee's motion for summary judgment.

## II.  Assignments of Error

{¶ 15} Appellant appeals and assigns the following four assignments of error for our review:

> [I.] The trial court erred in granting Appellee's motion for summary judgment on Appellant's breach of contract claim, because there are material issues of disputed fact on the terms of the contract and the applicability and effect of Appellee's Faculty Bylaws incorporated into the contract, and whether Appellee breached both.
>
> [II.] The trial court erred in granting Appellee's motion for summary judgment on Appellant's due process claim, because there are material issues of disputed fact on whether Appellee followed its disciplinary procedure in engaging in an adverse employment action against Appellant, under an exception to the general rule of the Court of Claims' lack of jurisdiction on constitutional claims.
>
> [III.] The trial court erred in granting Appellee's motion for summary judgment on Appellant's discrimination claim, because there are material issues of disputed fact on whether Appellant submitted sufficient evidence to show discriminatory motive or reason, and whether Appellee's purported non-discriminatory reason is a pretext.
>
> [IV.] The trial court erred in granting Appellee's motion for summary judgment on Appellant's retaliation claim, because there are material issues of disputed fact on whether and when Appellee started or restarted its accusation and investigation of Appellant's alleged but false mishandling of NIH [National Institutes of Health] grants accounts in retaliation of her engaging in a protected activity.

## III.  Standard of Review

{¶ 16} In her four assignments of error, appellant asserts the Court of Claims erred in granting summary judgment in favor of appellee.  An appellate court reviews summary judgment under a de novo standard.  *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-533, 2015-Ohio-3567, ¶ 19, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995).  Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment

is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 17} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the nonmoving party responds, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

## IV. First Assignment of Error—Breach of Contract

{¶ 18} In her first assignment of error, appellant asserts the Court of Claims erred in finding she failed to demonstrate the absence of a genuine issue of material fact as to her claim for breach of contract.

{¶ 19} Generally, a contract is " ' "defined as a promise, or a set of promises, actionable upon breach." ' " *Alexander v. Columbus State Community College*, 10th Dist. No. 14AP-798, 2015-Ohio-2170, ¶ 16, quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). The elements of a contract include an offer, acceptance, contractual capacity, consideration in the form of bargained-for benefit or detriment, a manifestation of mutual assent, and legality of purpose. *Mulvey v. GuideOne Mut. Ins. Co.*, 10th Dist. No. 17AP-47, 2017-Ohio-7902, ¶ 13; *Weigand & Son Corp. v. Matrix Realty Group, Inc.*, 10th Dist. No. 13AP-836, 2014-Ohio-2503, ¶ 8. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. *Kostelnik* at ¶ 16, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991). " 'To successfully prosecute a breach of contract claim, a plaintiff must present evidence of (1) the existence of a contract, (2) plaintiff's performance of the contract, (3) defendant's breach of the contract, and (4) plaintiff's loss or damage as a result of defendant's breach.' " *Ta v. Chaudhry*, 10th Dist. No. 15AP-867, 2016-Ohio-4944, ¶ 10, quoting *Barlay v. Yoga's Drive-Thru*, 10th Dist. No. 03AP-545, 2003-Ohio-7164, ¶ 6, citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600 (2d Dist.1994).

{¶ 20} "Questions regarding the existence of a contract and its meaning are questions of law subject to de novo review on appeal." *Mulvey* at ¶ 15. "When construing the terms of a written contract, the court's objective is to give effect to the intent of the parties, which is presumed to rest in the language the parties chose to employ." *Id.*

{¶ 21} In her complaint, appellant asserted appellee breached its employment contract, which the parties entered into in November 2013, by "unilaterally and without just cause terminat[ing] [appellant's] position as Associate Dean of Research for the College of Pharmacy, * * * terminat[ing] [appellant's] position as Department Chair, and  * * * cancell[ing] [appellant's] endowed professorship." (Compl. at 1-2.)

{¶ 22} In its motion for summary judgment, appellee asserted appellant could not establish breach of contract "when she was removed as Department Chair and Associate Dean of Research" because she "was an at-will employee in those positions, and there was no contract for [appellee] to breach." (Mot. for Sum. Jgmt. at 6.)  In support of this argument, appellee contended the offer letter "did not provide any specified duration for [appellant's] employment." (Mot. for Sum. Jgmt. at 6.)  Appellee further argued that, even if its offer letter constituted an employment contract, appellee retained the ability pursuant to its University Faculty Bylaws ("bylaws") to remove appellant from her position as department chair and associate dean because she "was an at-will employee in these administrative positions, not a contract employee." (Mot. for Sum. Jgmt. at 7.)

{¶ 23} In her response to the motion for summary judgment, appellant argued "[i]t is beyond dispute that the writing put forth by [appellee] and ultimately accepted and signed by [appellant] constitutes a contract of employment." (Response at 2.)  Regarding evidence demonstrating the existence of a genuine issue of material fact, appellant stated that "[i]t is clear that there are triable issues of fact as to whether or not a contract existed, [appellant] performed pursuant to the contract, [appellee] breached the contract and [appellant] was damaged as a result of said breach.  Those issues can only be determined by this Court upon a full presentation of all the evidence by all parties at Trial." (Response at 3.)

{¶ 24} The Court of Claims found appellee's offer letter did not provide any specified duration for appellant's employment.  However, the court did not specifically find whether or not there was a contract.  The court noted that the bylaws, which were incorporated by reference in the offer letter, provided the department dean with the authority to remove appellant from her administrative appointments.  Further, the court stated appellant failed

to dispute appellee's assertion that the bylaws did not provide for appeal from an administrative removal.  As a result, the court found the undisputed evidence demonstrated appellant could not prevail on her breach of contract claim.

{¶ 25} We begin our analysis by considering whether the Court of Claims correctly found that appellant could not establish a breach of contract claim regarding the termination of her positions as department chair and associate dean of research.  In the offer letter, after offering appellant appointments as department chair and associate dean for research, Taylor stated that appellant "will receive all attendant rights and responsibilities as provided for in the Bylaws of the Faculty," additionally noting the address at which the bylaws might be accessed on the internet.  (You Depo. at Ex. A.)  Thus, the offer letter incorporates the terms and conditions found in the bylaws.

{¶ 26} The bylaws provide that a "Department Chair is appointed by, reports to, and serves at the pleasure of, the Dean."  (You Depo., Ex. B at 7.)  Furthermore, the bylaws provide that a dean "[h]as the authority and responsibility for * * * [a]ppointing, evaluating and removing such assistant and associate deans, department chairs, and other program administrators and staff needed to carry out the mission and the academic and strategic plans of the College." (You Depo., Ex. B at 5-6.)  Thus, the evidence, which was undisputed before the Court of Claims, reflects that Taylor had the authority to remove appellant from her appointments as department chair and associate dean for research at will.  Accordingly, we find the court did not err in determining that appellant could not as a matter of law establish a breach of contract claim for the termination of her appointments as department chair and associate dean for research.

{¶ 27} Appellant asserts for the first time on appeal a number of new arguments, which she asserts demonstrate a genuine issue of material fact.  Although our standard of review on a decision granting summary judgment is de novo, this standard " 'does not supersede [an appellate court's] settled practice of not addressing issues raised for the first time on appeal.' "  *Tucker v. Leadership Academy for Math & Science of Columbus*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 20, quoting *Henson v. Cleveland Steel Container Corp.*, 11th Dist. No. 2008-P-0053, 2009-Ohio-180, ¶ 77.  As appellant failed to raise such issues in the Court of Claims, we decline to consider them now in the first instance.  *Brisco* at ¶ 21; *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 16.

{¶ 28} Finally, we consider the third part of appellant's claim for breach of contract, namely the "cancell[ation] [of appellant's] endowed professorship." (Compl. at 1-2.)

Although appellee argued in its motion for summary judgment that appellant's "administrative appointments" as department chair and associate dean for research were at-will, appellee made no similar arguments regarding the endowed professorship. Appellant, however, did mention in her response to the motion for summary judgment that she was damaged because "her endowed Professorship was canceled." (Response at 2.) The Court of Claims, in its decision granting the motion for summary judgment, failed to address appellant's allegations regarding the endowed professorship. On appeal, appellant argues the cancellation of the endowed professorship was a separate, actionable breach.

{¶ 29} As the party seeking summary judgment, appellee bore the burden of demonstrating the absence of a genuine issue of material fact on appellant's claims. *Dresher* at 293. Upon review, we find appellee failed to meet this burden with regard to appellant's claim that appellee committed breach of contract by cancelling her endowed professorship. As a result, the court erred in granting summary judgment on this portion of appellant's breach of contract claim. *Hall* at ¶ 12.

{¶ 30} Accordingly, we overrule in part and sustain in part appellant's first assignment of error.

## V. Second Assignment of Error—Due Process

{¶ 31} In her second assignment of error, appellant asserts the Court of Claims erred in granting summary judgment on her due process claim. In her complaint, appellant asserted that appellee "has not followed the faculty by-laws in effect and has violated [appellant's] due process rights granted to her by the faculty by-laws and by the laws of the State and Federal Government." (Compl. at 2.) In her response to the motion for summary judgment, appellant alleged that "under [appellee's] bylaws, such actions were appealable," but did not point to any specific provision of the bylaws in support of that argument. (Response at 3.)

{¶ 32} The court found appellee had demonstrated that department chairs were subject to administrative removal at the pleasure of their dean under the bylaws and appellant failed to point to any "provision for an appeal from such an administrative removal." (Decision at 4.) Furthermore, the court found that "to the extent [appellant] claims that appellee violated her constitutional due process rights, it is well settled that the Court of Claims lacks subject matter jurisdiction over claims involving constitutional and civil rights." (Decision at 5.)

{¶ 33} On appeal, appellant contends the Court of Claims erred in finding: (1) appellee's bylaws did not provide for a right of appeal, and (2) it lacked jurisdiction over appellant's constitutional due process claim. With regard to appellant's first argument, appellant failed to point to any provision in the bylaws to support her contention that the bylaws entitled her to a right to appeal, contractually or otherwise. For the first time on appeal, appellant points to provisions in the bylaws which she claims provide such a right. As previously noted, appellant was under the obligation in the Court of Claims to bring forward facts in the record to support her claim sufficient to demonstrate the existence of a genuine issue of material fact. We decline to consider appellant's arguments made in the first instance on appeal.

{¶ 34} Next, we turn to appellant's contention that the court possessed jurisdiction to hear her constitutional due process claim. "[T]he jurisdiction of the Court of Claims is limited by statute and specifically confined to the powers conferred by the legislature." *State ex rel. DeWine v. Court of Claims*, 130 Ohio St.3d 244, 2011-Ohio-5283, ¶ 21. Pursuant to R.C. 2743.03(A)(1), the Court of Claims has "original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code and exclusive jurisdiction of the causes of action of all parties in civil actions that are removed to the court of claims." R.C. 2743.02(E) provides that "[t]he only defendant in original actions in the court of claims is the state."

{¶ 35} The state is liable in the Court of Claims "in accordance with the same rules of law applicable to suits between private parties." R.C. 2743.02(A)(1). We have previously held that because "a private party cannot be held liable for * * * constitutional claims," such claims are not within the jurisdiction of the Court of Claims. *Gangale v. State*, 10th Dist. No. 01AP-1406, 2002-Ohio-2936, ¶ 9. To that end, we have "consistently held that claims alleging violations of due process and/or equal protection are not actionable in the Court of Claims." *Hamilton v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 06AP-916, 2007-Ohio-1173, ¶ 14. *See also Triplett v. S. Ohio Corr. Facility*, 10th Dist. No. 06AP-1296, 2007-Ohio-2526, ¶ 11 (holding Court of Claims without jurisdiction to hear due process claim); *Bleicher v. Univ. of Cincinnati College of Medicine*, 78 Ohio App.3d 302, 307 (10th Dist.1992); *Likes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 05AP-709, 2006-Ohio-231, ¶ 9.

{¶ 36} For the first time on appeal, appellant asserts the Court of Claims possessed jurisdiction over her due process violation claim under this court's decision in *Chan v. Miami Univ.*, 10th Dist. No. 93AP-213 (Sept. 28, 1993). In that case, Chan, a tenured

professor at Miami University who was employed pursuant to a contract, asserted the university breached its contractual obligations to him after it terminated his tenure following his alleged sexual harassment of a student. In that case, we found the Court of Claims had jurisdiction to hear Chan's due process claims because his tenured position created a property interest. We also clarified that the right sought to be enforced is that of continued employment, unless properly discharged. The Supreme Court of Ohio affirmed in *Chan v. Miami Univ.*, 73 Ohio St.3d 52 (1995).

{¶ 37} Because *Chan* was not raised in the Court of Claims, we need not consider it now. However, we do note that here, unlike in *Chan*, appellant's position as a tenured professor was not impacted by Taylor's decision in the removal letter to terminate her positions. As a result, we find *Chan* inapposite to the matter at hand. Therefore, we conclude the court did not err in determining that it lacked jurisdiction over appellant's constitutional due process claim.

{¶ 38} Accordingly, we overrule appellant's second assignment of error.

## VI. Third and Fourth Assignments of Error—Discrimination and Retaliation

{¶ 39} In her third and fourth assignments of error, appellant asserts the Court of Claims erred in granting summary judgment on her discrimination and retaliation claims.

## A. Applicable Law

{¶ 40} R.C. Chapter 4112 governs anti-discrimination actions brought under Ohio law. "The overall purpose of R.C. Chapter 4112 is to prevent and eliminate discrimination." *Ohio Civ. Rights Comm. v. Triangle Invest. Co.*, 10th Dist. No. 10AP-1117, 2012-Ohio-1069, ¶ 9, citing *Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St.3d 131, 133-34 (1989). *See Osborne v. AK Steel/Armco Steel Co.*, 96 Ohio St.3d 368, 2002-Ohio-4846, ¶ 5, quoting *Elek v. Huntington Natl. Bank*, 60 Ohio St.3d 135, 137 (1991) (stating that "[b]ecause R.C. Chapter 4112 is remedial, it must be 'liberally construed to promote its object (elimination of discrimination) and protect those to whom it is addressed (victims of discrimination)' ").

{¶ 41} R.C. 4112.02(A) provides that it is an unlawful discriminatory practice "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.14(A) governs age discrimination by employers and provides that "[n]o employer shall discriminate in any job opening against any applicant or discharge

without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."   R.C. 4112.02(I) governs retaliatory actions and provides that it is an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

{¶ 42}  R.C. 4112.99 authorizes civil actions for any violations of R.C. Chapter 4112.[1] Generally, Ohio courts look to federal anti-discrimination case law when examining employment discrimination cases made under state law.   *Nelson v. Univ. of Cincinnati*, 10th Dist. No. 16AP-224, 2017-Ohio-514, ¶ 31, citing *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 15.   *But see Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 31 (stating that Ohio courts are not bound to federal interpretation of analogous statutes).

{¶ 43}  In order to prevail in an employment discrimination case, a plaintiff must prove discriminatory intent through either direct or indirect methods of proof.   *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 766 (10th Dist.1998), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 583 (1996); *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983), fn. 3.   "[A] plaintiff may establish a prima facie case of age discrimination directly by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent."   *Mauzy* at paragraph one of the syllabus.

{¶ 44}  Absent direct evidence of discrimination, a plaintiff may indirectly establish discriminatory intent using the analysis promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), first adopted by the Supreme Court of Ohio in a race discrimination case in *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 197 (1981).   *See Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 147 (1983) (adopting the *McDonnell Douglas* framework in the context of claims of age discrimination).   The *McDonnell Douglas* framework consists of the employee's prima facie case, the employer's burden to produce a legitimate nondiscriminatory reason for the

---

[1] We note that R.C. 4112.14(B) also authorizes civil actions for violations of R.C. 4112.14(A).

challenged action, and the employee's burden to demonstrate that the employer's reason is pretext and that discrimination is the actual reason for the challenged action.

### 1. Prima Facie Case

{¶ 45} Establishing a prima facie case " 'creates a presumption that the employer unlawfully discriminated against the employee.' " *Williams* at ¶ 11, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The elements required to establish a prima facie case differ based on the nature of the claim and the facts of the case. *See id.* at ¶ 10, citing *McDonnell Douglas* at 802, fn. 13 (stating that "the elements of the prima facie case must remain flexible so that they can conform to the facts of the case"). Appellant has asserted both claims of discrimination and retaliation. We will discuss in detail the elements of a prima facie case for each type of claim below.

### 2. Employers Burden of Production

{¶ 46} If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate nondiscriminatory reason for the challenged action. *Bowditch v. Mettler Toledo Internatl., Inc.*, 10th Dist. No. 12AP-776, 2013-Ohio-4206, ¶ 16; *Williams* at ¶ 12, citing *Burdine* at 254. The employer meets its burden of production by submitting admissible evidence that " '*taken as true, would permit* the conclusion that there was a nondiscriminatory reason for the adverse action,' " and in doing so rebuts the presumption of discrimination that the prima facie case establishes. (Emphasis sic.) *Williams* at ¶ 12, quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

### 3. Pretext

{¶ 47} If the employer meets its burden of production, a plaintiff must prove by a preponderance of the evidence that the employer's legitimate nondiscriminatory reason is merely a pretext for unlawful discrimination. *Bowditch* at ¶ 17, citing *Barker* at 148. Generally, courts have found that a plaintiff establishes pretext by proving one or more of the following: (1) the employer's proffered reasons for the adverse employment action had no basis in fact, (2) the proffered reasons were not the true reason(s), or (3) the proffered reason(s) were insufficient to motivate discharge. *See, e.g., Mittler v. OhioHealth Corp.*, 10th Dist. No. 12AP-119, 2013-Ohio-1634, ¶ 44; *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.2003); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), *abrogated on other grounds* by *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), as recognized in *Geiger v. Tower Automotive*, 579 F.3d 614, 621 (6th Cir.2009).

Although the presumption created by the prima facie case disappears once the employer meets its burden of production, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom * * * on the issue of whether the defendant's explanation is pretextual.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000), quoting *Burdine* at 255, fn. 10.

### 4. Finding of Discrimination

{¶ 48} The ultimate burden of persuasion remains at all times with the plaintiff. *St. Mary's Honor* at 511; *Mittler* at ¶ 22. "A case that reaches this point is decided by the trier of fact on the ultimate issue of whether the defendant discriminated against the plaintiff." *Williams* at ¶ 14. In *St. Mary's Honor*, the Supreme Court of the United States stated:

> We have no authority to impose liability upon an employer for alleged discriminatory employment practices unless an appropriate factfinder determines, according to proper procedures, *that the employer has unlawfully discriminated.* We may, according to traditional practice, establish certain modes and orders of proof, including an initial rebuttable presumption of the sort we described earlier in this opinion, which we believe *McDonnell Douglas* represents. But nothing in law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable.

(Emphasis sic.) *Id.* at 514-15. In *Reeves*, the Supreme Court of the United States elaborated:

> [A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.
>
> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.

(Emphasis sic.) *Id.* at 148. Thus, " 'a reason cannot be proved to be "a pretext *for discrimination*" unless [the plaintiff demonstrates] *both* that the reason was false, *and* that discrimination was the real reason.' " (Emphasis sic.) *Williams* at ¶ 14, quoting *St. Mary's Honor* at 515. *See also Hall* at ¶ 35.

## B. Discrimination

{¶ 49} Here, appellant asserted a claim of discrimination on the basis of race, gender, and national origin. In its motion for summary judgment, appellee contended appellant lacked any direct evidence of discrimination. Further, appellee argued that even if appellant was able to present a prima facie case of discrimination using circumstantial evidence, appellee possessed a legitimate, nondiscriminatory reason for its actions and appellant was unable to demonstrate pretext. In her response to the motion for summary judgment, appellant stated only that appellee's alleged legitimate, nondiscriminatory reason was "an issue of both fact and law that [appellant] has not had the opportunity to present all the relevant evidence to the Court on the issue." (Response at 4.)

{¶ 50} The Court of Claims found appellant "failed to allege any facts to support either disparate treatment or disparate impact [or disparate] impact discrimination." (Decision at 5-6.) Additionally, the court found appellant "did not allege discrimination in her attempted appeal to President Gershen." (Decision at 6.) Nevertheless, the court examined whether appellant provided indirect evidence of discrimination. As we agree with the Court of Claims that appellant has failed to point to any direct evidence of discrimination, we shall constrain our analysis to whether appellant indirectly demonstrated discriminatory intent under the *McDonnell Douglas* framework.

### 1. Prima Facie Case

{¶ 51} In order to establish a prima facie case of gender or age discrimination, a plaintiff may demonstrate that he or she: (1) was a member of the statutorily protected class, (2) suffered an adverse employment action, (3) was qualified for the position, and (4) was replaced by a person outside the protected class or that the employer treated a similarly situated non-protected person more favorably. *Wasserstrom v. Battelle Mem. Inst.*, 10th Dist. No. 15AP-849, 2016-Ohio-7943, ¶ 16; *Hall* at ¶ 15. For purposes of summary judgment, a plaintiff must submit evidence from which a reasonable jury could conclude that the plaintiff established a prima facie case of discrimination. *Cline v. Catholic Diocese*, 206 F.3d 651, 661 (6th Cir.1999) (stating that a court must "consider[] whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry"); *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 528 (6th Cir.2007); *Brewer v. New Era, Inc.*, 564 F.Appx. 834, 840 (6th Cir.2014).

{¶ 52} With regard to appellant's prima facie case, the Court of Claims found it was undisputed that appellant was a member of a protected class and subject to an adverse

employment action. However, the court found that, even assuming appellant was qualified, she failed to provide evidence to satisfy the fourth element of the prima facie case.

{¶ 53} On appeal, appellant points to her testimony that Steven Schmidt, a white male, took her place as department chair. Appellant failed to raise any arguments related to her alleged replacement in the Court of Claims and, as a result, she has forfeited this argument on appeal. Therefore, we find appellant failed to carry her burden of demonstrating a prima facie case. Nevertheless, we consider the court's findings regarding the remaining portions of the *McDonnell Douglas* test.

## 2. Legitimate Nondiscriminatory Reason

{¶ 54} The Court of Claims found appellee met its burden of presenting a legitimate, nondiscriminatory reason for terminating appellant's administrative appointments. Specifically, the court found that appellee presented evidence establishing that "as a department chair and associate dean, [appellant] served at the pleasure of Dean Taylor and that [appellant] refused to follow his explicit direction." (Decision at 7.)

{¶ 55} On appeal, appellant asserts that because the issue of "whether [appellant] could be deemed [to] serve[] at the pleasure of the dean is a triable issue incapable of being resolved by summary judgment," the court should not have "rel[ied] upon this undecided issue to validate [appellee's] purported legitimate reason for removing [appellant]." (Appellant's Brief at 43.)

{¶ 56} Upon our review of the evidence, we find the Court of Claims did not err in determining that appellee met its burden of presenting a legitimate, nondiscriminatory reason for its actions. Appellee pointed to the testimony of Taylor and Gershen and the warning letter to appellant in order to support its claimed legitimate, nondiscriminatory reason. We have previously held that insubordination is a legitimate, nondiscriminatory reason for termination. *DeBolt v. Eastman Kodak Co.*, 146 Ohio App.3d 474 (10th Dist.2001), citing *Hood v. Diamond Prods., Inc.*, 74 Ohio St.3d 298, 302 (1996). Therefore, this evidence, if taken as true, " '*would permit* the conclusion that there was a nondiscriminatory reason for the adverse action.' " (Emphasis in original.) *Williams* at ¶ 12, quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

## 3. Pretext

{¶ 57} In *St. Mary's Honor*, the United States Supreme Court clarified the court's role at the pretext stage:

[Once] [t]he defendant's "production" (whatever its persuasive effect) [has] been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proved "that the defendant intentionally discriminated against [him]" because of his [age], [*Burdine* at 253]. The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and * * * upon such rejection, "no additional proof of discrimination is *required*," * * * (emphasis added). But the Court of Appeals' holding that rejection of the defendant's proffered reasons *compels* judgment for the plaintiff disregards the fundamental principle of Rule 301 that a presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the "ultimate burden of persuasion."

* * *

But a reason cannot be proved to be "a pretext *for discrimination*" unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.

(Emphasis sic.) *Id.* at 511, 515.

{¶ 58} In *Manzer*, the Sixth Circuit Court of Appeals held:

To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993) (emphasis added and quotation marks omitted). The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are "factually false." [*Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1123-24 (7th Cir.1994).] The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employee's [sic] proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for

what the Supreme Court has termed "a suspicion of mendacity." [*St. Mary's* at 2749]. As [*St. Mary's*] teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.

The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

(Emphasis sic.) *Id.* at 1084. Importantly, regardless of the method used, "the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." (Internal quotation marks omitted.) *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.2003), quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir.2001).

{¶ 59} Regarding pretext, the Court of Claims found appellant's "assertions that [appellee's] decisions were based upon discriminatory animus are unsupported and do not prove pretext." (Decision at 7.) Because appellant "failed to present any evidence to overcome [appellee's] legitimate, nondiscriminatory reason for terminating her administrative appointments," the court found that appellee was "entitled to judgment as a matter of law as to [appellant's] claim for discrimination." (Decision at 7.)

{¶ 60} Appellant raises a number of arguments for the first time on appeal which she asserts support a finding that appellee's actions were discriminatory. However, as appellee met its burden of production for demonstrating a legitimate, nondiscriminatory reason, appellant bore the burden of providing evidence demonstrating that a genuine issue of material fact remained on the question of pretext. *Burns v. Columbus, Dept. of Pub. Safety, Div. of Police*, 91 F.3d 836, 844 (6th Cir.1996) (stating that in order to survive the employer's summary judgment motion the plaintiff "must show that a genuine issue of material fact exists as to whether the [employer's] asserted explanation for its action is a mere pretext for discrimination"). Appellant instead argued that a genuine issue of

material fact existed without pointing to any evidence in the record in support of such contention. Appellant cannot now avail herself of arguments she failed to raise before the Court of Claims.

{¶ 61} Nonetheless, even if we were to consider appellant's arguments, we find she has failed to carry her burden of demonstrating a genuine issue remained for trial on the element of pretext. Importantly, appellant does not contest that Taylor was her supervisor, that he instructed her to refrain from making the communications at issue, and that appellant nevertheless made such communications. Instead, appellant essentially argues she could not have committed insubordination by communicating with Gershen. Appellant attempts to support this argument by taking issue with the dates contained in Chudakoff's affidavit.

{¶ 62} Even when construed in a light most favorable to appellant, the evidence simply does not support appellant's argument that appellee "used insubordination [as an] excuse to cover up its true discriminatory motive and intent against [appellant], including its plan of ruining [appellant's] career and reputation by creating a false light of her mismanaging NIH grants." (Appellant's Brief at 48.) As a result, we find appellant has failed to carry her burden of demonstrating pretext. *See Stembridge v. Summit Academy Mgt.*, 9th Dist. No. 23083, 2006-Ohio-4076, ¶ 24.

{¶ 63} Accordingly, we overrule appellant's third assignment of error.

## C. Retaliation

{¶ 64} In her fourth assignment of error, appellant asserts the Court of Claims erred in granting summary judgment on her retaliation claim.

{¶ 65} In order to establish a prima facie case of retaliation, pursuant to R.C. 4112.02(I), a plaintiff must demonstrate that: "(1) the plaintiff engaged in a protected activity, (2) the employer knew the plaintiff engaged in the protected activity, (3) the employer subjected the plaintiff to an adverse employment action, and (4) a causal link existed between the protected activity and the adverse action." *Dautartas v. Abbott Laboratories*, 10th Dist. No. 11AP-706, 2012-Ohio-1709, ¶ 49.

{¶ 66} If a plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a legitimate nondiscriminatory reason for its actions. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 14, citing *McDonnell Douglas* at 802. If the employer satisfies this burden, the burden shifts back to the plaintiff

to demonstrate that the proffered reason was not the real reason for the employment decision.  *Id.*, citing *Burdine* at 256.

{¶ 67} In her complaint, appellant alleged that following her appeal letter to Gershen in which she contested her removal as department chair, appellee "intentionally took retaliatory action against [her by] accusing her of mismanagement and mishandling the capital NIH grants under her control * * * without any factual basis."  (Compl. at 3.) Appellant also asserted appellee took unspecified "retaliatory actions against [appellant's] family member and fellow employees."  (Compl. at 3.)

{¶ 68} Appellee, in its motion for summary judgment, asserted appellant did not engage in any protected activity and that appellee did not take any adverse actions against her.  In her response to the motion for summary judgment, appellant acknowledged that appellee "outline[d] relevant case law concerning the issue of retaliation," but asserted she "has never had the opportunity, pre-trial, to present relevant evidence concerning [appellee's] retaliatory practices against her." (Response at 4.)  Appellant also stated "[s]he ha[d] the burden of proof pre-trial to prove retaliation."  (Response at 4.)  Appellant provided no support for her retaliation claim in the form of citations to the record or cases.

{¶ 69} The Court of Claims found that appellant's "letter to President Gershen does not oppose or identify any unlawful discriminatory practice" and that appellant "has not alleged that she participated in any related investigation, proceeding, or hearing." (Decision at 9.)  Additionally, the court found appellant "failed to present any evidence to show that she suffered an adverse employment action as a result of sending the appeal letter."  (Decision at 9.)  Accordingly, the court found appellant failed to meet her "initial burden of establishing a prima facie case of retaliation and she has failed to present any evidence to support * * * her claim."  (Decision at 9.)

{¶ 70} Appellant now asserts, for the first time on appeal, that she undertook additional protected activities, including a complaint she allegedly filed in the Portage County Court of Common Pleas on April 10, 2015 and her filing of the instant matter in the Court of Claims on August 21, 2015.  Appellant failed to raise these theories before the Court of Claims, and she cannot raise them now for the first time on appeal.  Therefore, we decline to consider appellant's arguments as they relate to these two allegedly protected activities and limit our analysis to whether her appeal letter constituted a protected activity.

{¶ 71} In her appeal letter, appellant stated that she was "protected by the relevant federal and administrative due process laws and corresponding university policies."  (Mot.

for Sum. Jgmt. Ex. T-1.)  "An employee's activity is 'protected' for purposes of R.C. 4112.02(I) if the employee has 'opposed any unlawful discriminatory practice' (the 'opposition clause') or 'made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code' (the 'participation clause')."  *Veal v. Upreach LLC*, 10th Dist. No. 11AP-192, 2011-Ohio-5406, ¶ 18, citing *HLS Bonding v. Ohio Civ. Rights Comm.*, 10th Dist. No. 07AP-1071, 2008-Ohio-4107, ¶ 15.

{¶ 72} Appellant made no mention in her appeal letter of her opposition to any unlawful discriminatory practice, nor did she provide any evidence that she acted within the meaning of the participation clause.  Further, prior to the instant appeal, appellant failed to explain how her appeal letter satisfied either the participation or opposition clause. As a result, appellant failed to meet her burden of establishing a prima facie case of retaliation under R.C. 4112.02(I) by demonstrating she engaged in a protected activity. Therefore, we find the court did not err in determining that appellant failed to present a genuine issue of material fact on her retaliation claim.  *Id.* at ¶ 19.

{¶ 73} Accordingly, we overrule appellant's fourth assignment of error.

## VII.  Conclusion

{¶ 74} Having sustained in part and overruled in part appellant's first assignment of error, and overruled appellant's second, third, and fourth assignments of error in their entirety, we affirm the judgment of the Court of Claims of Ohio as to appellant's claims for: (1) breach of contract relating to her positions as department chair and associate dean, (2) due process, (3) discrimination, and (4) retaliation.  However, as we have determined that appellee failed to demonstrate the absence of a genuine issue of material fact as to appellant's claim for breach of contract as to the cancellation of her endowed professorship, we remand to the Court of Claims to conduct further proceedings on that limited claim only.

*Judgment affirmed in part
and reversed in part; cause remanded.*

BROWN, P.J., and TYACK, J., concur.