[Cite as *Steeplechase Village, Ltd. v. Columbus*, 2020-Ohio-7012.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Steeplechase Village, Ltd., | : | |
| Plaintiff-Appellant, | : | |
| | | No. 19AP-736 |
| v. | : | (C.P.C. No. 16CV-2436) |
| City of Columbus, Ohio, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 31, 2020

**On brief:** *Plank Law Firm, LPA*, and *David Watkins*, for appellant.

**On brief:** *Zach Klein,* City Attorney, *Janet R. Hill*, and *Sarah M. Harrell*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, Steeplechase Village, Ltd. ("Steeplechase"), appeals from the judgment of the Franklin County Court of Common Pleas granting the motion of defendant-appellee, the City of Columbus (the "City"), for summary judgment and denying the motion of Steeplechase for summary judgment. For the following reasons, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} This case arises from a dispute concerning stormwater charges assessed by the City upon, and paid by, Steeplechase between June 15, 2008 and August 3, 2018. (*See*

*generally,* March 10, 2016 Compl.; May 24, 2017 Am. Compl.)  Steeplechase is an Ohio limited liability company which owns 102.4 acres of real property with improvements (the "Property").  (Am. Compl. at ¶ 1-2.)  The Property is a residential community with 404 rental units which include apartments, single family homes, and duplexes.  (Landrum Dep. at 8:21-9:1.)  It is undisputed that the Property is located within the City of Columbus.

{¶ 3}  Approximately 6 acres at the northwest corner of the Property drains north and west towards Canal Road.  (Oct. 3, 2018 Stipulation.)  Approximately 4.8 acres of the Property along the east side of Shook Road drains east into channels and drainage systems of the Property developed to the east of the Property at Donn Eisele Street.  *Id.*  The remaining approximately 91.6 acres of the Property drains through open channels located on the Property to the south into the open channel adjacent to Canal Road.  *Id.*

{¶ 4}  Gregory Horch, the City's GIS[1] analyst, prepared the Steeplechase Stormwater Drainage Maps (the "Drainage Maps") and at his deposition he provided testimony regarding the Property's stormwater drainage.  (Horch Aff. at ¶ 4-5, 8, 10-11; Horch Dep. at 7, et seq.; Drainage Maps.)  Horch testified that the Property contains stormwater closed channels, or underground pipes or field tiles, which are private and not maintained by the City.  (Horch Dep. at 8-9.)  Stormwater drains from the Property to the south into stormwater open channels, which are ditches or streams.  *Id.* at 9.  The stream immediately south of the Property is within Franklin County but is not within the boundaries of the City.  *Id.*  However, that stream flows into the Canal Road Channel, which is within the boundaries of the City.  *Id.* at 9-10.

---

[1] "GIS" is an acronym for Geographic Information System.  (Horch Aff. at ¶ 3.)  "GIS is a computer system which captures, stores, checks and displays data related to positions on the earth's surface* * *GIS systems can include, among many other things, information about the landscape, such as the location of streams and other waterways, storm drains, and roads."  *Id.*

{¶ 5}   Between June 15, 2008 and August 3, 2018, the City assessed $365,014.78 in stormwater charges upon the Property.   (Pl.'s Mot. For Summ. Jgmt. Exs. C and D.) Steeplechase paid the charges.  *Id.*

{¶ 6}   On March 10, 2016, Steeplechase filed a complaint in the Franklin County Court of Common Pleas.  (*See generally*, March 10, 2016 Compl.)  An amended complaint was filed on May 24, 2017, naming the City as the sole defendant.  (*See generally* May 24, 2017 Am. Compl.)   The amended complaint sets forth five demands for relief: (1) declaratory judgment of the rights of Steeplechase under City Code Chapter 1149; (2) declaratory judgment finding that City Code Chapter 1149 is an illegal and unconstitutional tax; (3) a refund of charges; (4) declaratory judgment finding that an open channel in the City through which some of Steeplechase's stormwater drains is actually not located in the City; and (5) preliminary and permanent injunction enjoining the City from imposing stormwater charges on Steeplechase's property or, in the alternative, a declaration that the amount of stormwater charges assessed upon Steeplechase's property is excessive.  *Id.*

{¶ 7}   On October 15, 2018, each of the parties filed a motion for summary judgment pursuant to Civ.R. 56.  On October 3, 2019, the trial court issued a decision which granted the motion of the City and denied the motion of Steeplechase.  (Oct. 3, 2019 Decision.) The decision was made final in a judgment entry issued on the same day.  (Oct. 3, 2019 Jgmt. Entry.)

{¶ 8}   This timely appeal followed.

## II.  Assignments of Error

{¶ 9}   Appellant assigns five errors for our review:

> [1.] The Trial Court erred by failing to enforce the plain language of Columbus Code of Ordinances Sec. 1149.03.

[2.] The Trial Court erred by finding that there was no genuine issue as to any material fact and Appellee was entitled to judgment as a matter of law.

[3.] The trial Court erred by finding that the stormwater charges imposed by the City on the Property were fees and not taxes.

[4.] The Trial Court erred by finding that Appellant was not entitled to a refund of stormwater service charges.

[5.] The Trial Court erred by finding that Appellant was not entitled to an injunction.

## III.  Standard of Review

{¶ 10} An appellate court reviews summary judgment under a de novo standard. *You v. Northeast Ohio Med. Univ.*, 10th Dist. No. 17AP-426, 2018-Ohio-4838, ¶ 16, quoting *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-533, 2015-Ohio-3567, ¶ 19, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995). Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds viewing the evidence most strongly in favor of the nonmoving party could reach but one conclusion, and that conclusion is adverse to the nonmoving party.  Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181 (1997).

{¶ 11} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact by pointing to specific evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary

judgment is appropriate unless the nonmoving party responds, by affidavit or as otherwise provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle,* 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 12} A fact is "material" if it "might affect the outcome of the suit under the applicable substantive law." *Mitchell v. Mid-Ohio Emergency Servs., L.L.C.*, 10th Dist. No. 03AP-981, 2004-Ohio-5264, ¶ 12. A "genuine" issue of material fact exists to prevent summary judgment only if "a reasonable jury could find that the evidence satisfies the evidentiary standards required at trial." *Myocare Nursing Home, Inc. v. Fifth Third Bank*, 98 Ohio St.3d 545, 2003-Ohio-2287, ¶ 33. Additionally, a nonmovant's own self-serving assertions, whether made in an affidavit, deposition or interrogatory responses, cannot defeat a well-supported summary judgment when not corroborated by any outside evidence. *White v. Sears, Roebuck & Co.*, 10th Dist. No 10AP-294, 2011-Ohio-204, ¶ 7.

{¶ 13} Finally, "[t]rial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998), citing *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

## IV. Law and Analysis

### A. First Assignment of Error

{¶ 14}  In its first assignment of error, Steeplechase contends the trial court erred by failing to enforce the plain language of Columbus City Code of Ordinances Section 1149.03. We disagree.

{¶ 15}  We begin with a brief overview of the City's stormwater utility and discussion of the sections of the Columbus City Code (hereinafter the "City Code") applicable to this case.  It is undisputed that Ohio municipalities have the authority to own and operate utilities, including a stormwater utility, pursuant to the Ohio Constitution, Article XVIII, Section 4.  *Wooster v. Graines*, 52 Ohio St.3d 180, 181 (1990).  Thus, the City, as a municipality, has the authority to establish and maintain a utility and charge the public for the services provided so long as the rates are just and equitable and the funds collected are for the exclusive use of the utility.  *See id.*, citing R.C. 729.49 and 729.52.

{¶ 16}  The Columbus City Charter (hereinafter "City Charter") requires the City to charge consumers for utility service at a rate fixed by ordinance of City Council and made in an equitable manner to cover the cost of service in full.  City Charter 118.  In determining utility rates, consumers "shall be charged with and shall pay the current cost of maintenance, operation and supply, interest and principal on outstanding utility debt obligations, and losses sustained by depreciation."  City Charter 119.  Consistent with the City Charter, the City's stormwater management program charges scheme is established by Chapter 1149 of the City Code.  City Code 1149, et seq.

{¶ 17}  Section 1149.01 of the City Code provides that "[s]tormwater management is intended to provide for the safe and efficient capture and conveyance of stormwater runoff, mitigate the damaging effects of stormwater runoff, correction of stormwater problems; to fund activities of stormwater management, and include design, planning, regulation, education, coordination, construction, operations, maintenance, inspection

and enforcement activities, all for the protection of the public health, welfare, and safety." City Code 1149.01. Section 1149.01 further provides that monies collected from stormwater service charges "are to be utilized solely for the management of stormwater." *Id.* This mandate is expounded upon in section 1149.10, which establishes a stormwater operating fund and requires that one hundred percent of stormwater maintenance revenues and any miscellaneous revenues "shall be allocated to the stormwater operating fund." City Code 1149.10(b)(1) and (2). The stormwater operating fund may only be utilized:

> for the operation, maintenance and improvement costs of the stormwater system, the retirement of stormwater capital improvement program debt, the timely replacement of stormwater system equipment, and all other stormwater management program activities.

City Code 1149.10(c)(1).

{¶ 18} Pursuant to section 1149.05 of the City Code, "[a] stormwater service charge shall be imposed on each and every lot and parcel of land within the city, and the owner thereof." City Code 1149.05. The stormwater service charge "is deemed reasonable and is necessary to pay for the repair, replacement, planning, improvement, operation, regulation, and maintenance of the existing and future city stormwater system." *Id.* Stormwater rates are "designed to recover the cost of rendering stormwater service for the time period under consideration." City Code 1149.06. Rates are established "so as to maintain adequate fund reserves to provide for reasonably expected variations in the cost of providing services, as well as variations in the demand for services." *Id.*

{¶ 19} Like many municipalities, the basis for the City's rate structure for stormwater charges is premised on the impervious area of each property. City Code 1149.08; *see also* Def.'s Resp. to Pl.'s Mot. for Summ. Jgmt at 2. In adopting Chapter 1149 of the City Code, Columbus City Council specifically determined that "the stormwater service charge should be just and equitable and reflect the relative contribution of stormwater runoff from a property * * * as a result of the collection of surface water, and should consider the impervious area of the various properties within the City, because the extent of storm and surface water runoff from a particular lot or parcel is largely a function of its impervious area." (Brief of Appellee at 7, citing Col. City Ordinance No. 1381-94.[2])

{¶ 20} "Impervious area" is specifically defined in the City Code as "areas that have been paved and/or covered with buildings and materials which include, but are not limited to, concrete, asphalt, rooftop, and blacktop." City Code 1149.02.006. All properties with impervious area within the City are assigned an "equivalent residential unit (ERU)," or a multiple thereof, based on the amount of impervious area of each property. City Code 1149.08(a). Pertinent to the instant case is section 1149.08(a)(2), pertaining to non-residential properties, which provides:

> Non-residential properties. Non-residential properties will be assigned an ERU multiple based upon the properties' individually measured impervious area (in square feet) divided by two thousand (2,000) square feet (one (1) ERU). This division will be calculated to the first decimal place and rounded according to mathematical convention.

City Code 1149.08(a)(2). The City Code defines "Equivalent residential unit (ERU)" as "a value, equal to two thousand (2,000) square feet of impervious area of residential properties within the City of Columbus." City Code 1149.02.004.

---

[2] Although in its brief the City cites to Col. City Ordinance No. 1981-94, upon reference to the codification of the ordinance as set forth in Chapter 1149, it appears that the correct ordinance is actually No. 1381-94.

{¶ 21} As stated previously, the Property owned by Steeplechase is a 102.4-acre parcel with 404 rental units, including apartments, single family homes, and duplexes. (Am. Compl. at ¶ 1-2; Landrum Dep. at 8:21-9:1.) Consequently, the impervious area of the Property results in a higher ERU multiple being assigned to it relative to a smaller, less densely developed property. Steeplechase did not challenge the ERU multiple assigned to the Property in its motion for summary judgment and does not raise this as an issue on appeal.[3] (*See* Pl.'s Mot. for Summ. Jgmt. at 9.)

{¶ 22} We now return to Steeplechase's first assignment of error wherein Steeplechase asserts the trial court erred by failing to enforce the plain language of section 1149.03 of the City Code. The construction and interpretation of statutes is a recognized function of declaratory action. *Town Ctrs. Ltd. Partnership v. Ohio State Atty. Gen.*, 10th Dist. No. 99AP-689 (Apr. 4, 2000). R.C. 2721.03 specifically provides that any person "whose rights, status, or other legal relations are affected by a constitutional provision, statute, [or] rule" may have determined "any question of construction or validity arising under the instrument, constitutional provision, statute, [or] rule * * * and obtain a declaration of rights, status, or other legal relations under it."

{¶ 23} The court's primary goal of statutory construction is to give effect to legislative intent. *Silver Lining Group. EIC Morrow Cty. v. Ohio Dept. of Edn. Autism Scholarship Program*, 10th Dist. No. 16AP-398, 2017-Ohio-7834, ¶ 34, citing *State v. Banks*, 10th Dist. No. 11AP-69, 2011-Ohio-4252, ¶ 13, citing *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 11. To determine legislative intent, the court looks to and

---

[3] The City Code provides for a right to challenge the ERU multiple assigned to a given property "by filing an appeal with the administrator of the division of sewerage and drainage for adjustment thereof, stating in writing the grounds for the appeal." City Code 1149.09.

gives effect to the statutory language without deleting or inserting words. *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 39-40, 2001-Ohio-236. The statutory language must be considered in context, and the court must construe words and phrases "according to the rules of grammar and common usage." (Citation omitted.) *Silver Lining Group.* at ¶ 34, citing *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, ¶ 16.

{¶ 24} Where the words in a statute are " ' "free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation." ' " *Silver Lining Group.* at ¶ 34, quoting *Hairston* at ¶ 12, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. " 'It is only where the words of a statute are ambiguous, uncertain in meaning, or conflicting that a court has the right to interpret a statute.' " *Silver Lining Group.* at ¶ 35, quoting *In re Adoption of Baby Boy Brooks*, 136 Ohio App.3d 824, 829 (10th Dist.2000). An ambiguity exists only "if the language of a statute is susceptible of more than one reasonable interpretation." *Id.*, citing *Columbus v. Mitchell*, 10th Dist. No. 16AP-322, 2016-Ohio-7873, ¶ 6.

{¶ 25} Section 1149.03 of the City Code, titled "Necessity for charges," provides as follows:

> It is hereby determined necessary for the protection of public health, safety, and welfare and to conform with federal, state, and local laws and regulations that a system of charges for stormwater service be established *which allocates the cost of providing stormwater service to each user in such a manner that the allocated costs are proportionate to the cost of providing stormwater service to that user, insofar as those costs can reasonably be determined.*

(Emphasis added.) City Code. 1149.03. We find nothing ambiguous or uncertain in the language of this section of the City Code and we are therefore constrained to its construction according to the plain language used. *Silver Lining Group.* at ¶ 34-35.

{¶ 26} Steeplechase argues that this section of the City Code "does not authorize the City to simply divide the operational costs of the entire stormwater system equally between all property owners in the City." (Appellant's Brief at 27.) But this is an incorrect characterization of the methodology utilized in Chapter 1149 of the City Code to assess stormwater charges. Instead, as discussed above, the City has adopted a system based on the amount of impervious area, defined in the City Code, for each parcel of property located within the bounds of the City of Columbus. All parcels with impervious area are assigned an equivalent residential unit ("ERU") multiple, and the stormwater charges for any given property are assessed based on the total number of ERUs assigned to that property.

{¶ 27} As argued by the City, Steeplechase has not provided any evidence that shows the ERU methodology fails to result in reasonably determining "the cost of providing stormwater service to each user in such a manner that the allocated costs are proportionate to the cost of providing stormwater service to that user" as prescribed by 1149.03 or that it is otherwise flawed. Indeed, Steeplechase concedes that "it would be impractical for the City to analyze all properties within the City to arrive at a charge for each individual property." (Appellant's Brief at 11.) Furthermore, the assertion by Steeplechase that it's Property is "unique" is an assertion that could be made by virtually every owner of real property, for it is hornbook law that almost all real property is unique. *Holstein v. Crescent Communities, Inc.*, 10th Dist. No. 02AP-1241, 2003-Ohio-4760, ¶ 16, citing *Gleason v. Gleason*, 64 Ohio App.3d 667, 672 (10th Dist.1991).

{¶ 28} Steeplechase also misquotes and mischaracterizes the trial court's decision on this issue. First, contrary to Steeplechase's representation, the trial court's decision did not set forth as an undisputed fact that "[t]he City's cost of providing stormwater service to 89% of the Property over the relevant time period was $0." (Appellant's Brief at 27.) Rather, the trial court actually stated, "*[p]laintiff argues that the charges are excessive because* the City's actual cost for providing stormwater service to the Property over the relevant time period is $0." (Emphasis added.) (Decision at 8.) Second, Steeplechase's assertion notwithstanding, the trial court did not "[hold] that it was proper for the City to disproportionately charge the Property so that the stormwater system 'overall' could function." (Appellant's Brief at 28.) Instead, the trial court was simply pointing out that despite the undisputed fact that there had been no need to perform maintenance of the channels into which the Property's stormwater directly flows to date, such fact was likely "due to the successful maintenance of the overall stormwater system," a necessity in order "for each individual part to function." (Decision at 11.)[4]

{¶ 29} Put another way, merely because the City has not had to perform any maintenance to the channels into which Steeplechase's stormwater directly flows does not mean that the cost to provide stormwater service to the Property equals $0. As discussed previously, City Code 1149.05 provides that the stormwater service charge assessed to each property "is deemed reasonable and is necessary to pay for the repair, replacement, planning, improvement, operation, regulation, and maintenance of the existing *and*

---

[4] We further observe that this particular section of the trial court's decision was addressing Steeplechase's argument that Chapter 1149 of the City Code imposes an illegal and unconstitutional tax, *not* its argument that the charges assessed to the Property violate section 1149.03 as failing to be "proportionate to the cost or providing stormwater service" to the Property. We revisit the issue of "illegal tax versus permissible fee" in addressing Steeplechase's third assignment of error later in our decision.

*future* city stormwater system."   (Emphasis added.)   Similarly, City Code 1149.06 specifically provides that rates are established "so as to maintain adequate *fund reserves* to provide for reasonably expected variations in the cost of providing services, as well as variations in the demand for services."   (Emphasis added.)   As the trial court aptly observed, "it is important for the City to have reserve funds * * * in the event that an emergency arises anywhere within the stormwater system, including the channels that service the Property."  (Decision at 11.)

{¶ 30}  The admissible evidence in the form of the deposition testimony and affidavit of Gregory Horch demonstrates that Steeplechase's stormwater drainage flows from the Property through a series of closed channels and open channels to an open channel which is within the boundaries of the City (the Canal Road Channel).   (Horch Aff. at ¶ 6-8, 10-11 and attached Exs; Horch Dep. at 7-10.) Steeplechase has provided no evidence in rebuttal on this point.   Therefore, the evidence shows that Steeplechase's Property is part of the City's stormwater system[5] and is thus properly subject to 1149.03.   Steeplechase's contention that the trial court improperly determined that section 1149.03 of the City Code permitted the City to disproportionately charge the Property in furtherance of the overall successful functioning of the stormwater system is unfounded and the trial court did not

---

[5] The City's stormwater system includes:

> all man-made facilities, structures, and natural watercourses owned by the city, or over which the city has jurisdiction by law to operate or maintain, used for collecting and conducting stormwater to, through and from drainage areas to the points of final outlet including, but not limited to, any and all of the following: conduits and appurtenant features, canals, creeks, catch basins, ditches, streams, gulches, gullies, flumes, culverts, siphons, streets, curbs, gutters, dams, floodwalls, levees, retention or detention facilities, rivers, public stormwater open channels and pumping stations.

City Code. 1149.02.012

fail to enforce the plain language of this section of the City Code. Accordingly, we overrule Steeplechase's first assignment of error.

**B. Second Assignment of Error**

{¶ 31} In its second assignment of error, Steeplechase asserts that the trial court erred by finding that there was no genuine issue as to any material fact and Appellee was entitled to judgment as a matter of law. We do not agree.

{¶ 32} Steeplechase's second assignment of error is simply a variation of the argument presented in its first assignment of error that, in contravention of Section 1149.03 of the City Code, the charges assessed are not proportionate to the actual cost of providing stormwater service to the Property. The argument fares no better under the second assignment of error than it did under the first assignment of error.

{¶ 33} As discussed above, section 1149.05 of the City Code requires that a stormwater service charge be imposed on every parcel of property within the city, and the charge "is deemed reasonable and is necessary to pay for the repair, replacement, planning, improvement, operation, regulation, and maintenance of the existing *and future* city stormwater system." (Emphasis added.) City Code 1149.05. Stormwater rates are "designed to recover the cost of rendering stormwater service for the time period under consideration" and are established "so as to maintain adequate *fund reserves* to provide for reasonably expected variations in the cost of providing services, as well as variations in the demand for services." (Emphasis supplied.) City Code 1149.06.

{¶ 34} The admissible evidence in the form of the affidavit of Johnathan S. Lee and its attached exhibits show the City expended over $180 million on stormwater infrastructure improvements between 2005 and 2015. (Lee Aff. at ¶ 6 and Ex. D-2.) All of

the funds expended came from the Storm Build America Bonds Fund, the Storm Recovery Zone Fund, the Storm Sewer Bond Fund, the Flood and Storm Sewer Fund, and the Stormwater Operating Fund established pursuant to section 1149.10 of the City Code. (Lee Aff. at ¶ 7.) Furthermore, none of the foregoing funds were expended for any purpose other than stormwater infrastructure improvements during the relevant time period, as would be prohibited by section 1149.10. *Id.* In addition to using the funds to cover operating costs, and as provided for in section 1149.06 of the City Code, the City also maintains a stormwater reserve fund. (*See* Lee Aff. at ¶ 5 and Ex. D-1.)

{¶ 35} As thoroughly discussed under the first assignment of error, the City's rate structure for stormwater charges is based on the impervious area of each property, and each property with impervious area within the City is assigned an "equivalent residential unit (ERU)," or a multiple thereof, based on the amount of impervious area of that property. City Code 1149.08(a). As previously noted under the first assignment of error, Steeplechase has not submitted any evidence that would present a genuine issue of material fact as to whether the ERU methodology adopted by the City to assess stormwater charges fails to result in reasonably determining "the cost of providing stormwater service to each user in such a manner that the allocated costs are proportionate to the cost of providing stormwater service to that user" as prescribed by 1149.03.

{¶ 36} Furthermore, although Steeplechase argues in its brief that section 1149.03 "requires the City to address Steeplechase's concerns and to adjust the method of calculating Steeplechase's stormwater charges * * *," a plain reading of section 1149.03 readily shows it does no such thing. (*See* Brief of Appellant at 37.) And while Steeplechase asserts that the City should "make a 'reasonable determination' of the costs of providing

stormwater service to the Property," the City has already done exactly that via the adoption of the methodology based on impervious area and assigned ERUs.

{¶ 37}  In short, the trial court did not err in finding that there was no genuine issue as to any material fact and the City was entitled to judgment as a matter of law.  Accordingly, Steeplechase's second assignment of error is without merit and it is overruled.

### C. Third Assignment of Error

{¶ 38}  In its third assignment of error, Steeplechase asserts that the trial court erred by finding that the stormwater charges imposed by the City on the Property were fees and not taxes.  We find no merit in this assignment of error.

{¶ 39}  The Supreme Court of Ohio has acknowledged that there is no bright-line rule that distinguishes a tax from a fee.  *State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow*, 62 Ohio St.3d 111, 117 (1991) ("[i]t is not possible to come up with a single test that will correctly distinguish a tax from a fee in all situations * * *.")  Therefore, "[d]etermining whether an assessment is a fee or a tax must be done on a case-by-case basis dependent upon the facts and circumstances surrounding each assessment." *Id.* at 115.

{¶ 40}  Although no single test exists for making the determination whether a given assessment is a permissible fee versus an illegal tax, the Supreme Court has provided guidance on this issue.  In *Drees Co. v. Hamilton Twp.*, 132 Ohio St.3d 186, 2012-Ohio-2370, the court expanded upon its earlier decision in *Withrow* and set forth four factors that tend to indicate that an assessment is a fee: (1) the assessment is "imposed in furtherance of regulatory measures to address a specified issue"; (2) the assessment is not placed in the general fund, but is used only to fund the specified purpose; (3) the assessment is " 'imposed by a government in return for a service it provides' "; and (4) the assessment

involves "a specific charge in return for a service * * *." *Drees* at ¶ 16-20, citing and quoting *Withrow* at 111, 113, 116-17.

{¶ 41} The *Drees* court also applied the three-factor analysis employed by the Sixth Circuit Court of Appeals in *Am. Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Mgt. Dist.*, 166 F.3d 835 (6th Cir.1999), which was gleaned from federal courts in the First and Ninth Circuits in *Bidart Bros. v. California Apple Comm.*, 73 F.3d 925, 931 (9th Cir.1996) and *San Juan Cellular Tel. Co. v. Pub. Serv. Comm. of Puerto Rico*, 967 F.2d 683, 685 (1st Cir.1992). This analysis is similar to that used in *Withrow*. *Drees* at ¶ 26. Under this analysis, in determining whether an assessment is a tax or a fee, "a court should consider '(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed.' " *Id.* at ¶ 27, quoting *Bidart* at 931.

{¶ 42} In *Drees*, the court explained the classic distinction between a tax and a fee as follows:

> The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. * * * The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. * * * It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. * * * Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses.

*Drees* at ¶ 28, quoting *San Juan* at 685. The *Drees* court further explained that with regard to the first two factors of the *Am. Landfill* analysis, " '[a]n assessment imposed directly by the legislature is more likely to be a tax than an assessment imposed by an administrative

agency' " and " '[a]n assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class.' " *Drees* at ¶ 29, quoting *Bidart*, 73 F.3d at 931, citing *San Juan*, 967 F.2d at 685.

{¶ 43} In *Drees*, the court acknowledged that "[m]ost assessments fall somewhere near the middle of the spectrum between a fee and a tax" and in these cases, it is the use of the funds which is the predominant factor in making the ultimate determination. *Drees* at ¶ 30. " 'When the ultimate use is to provide a general public benefit, the assessment is likely a tax, while an assessment that provides a more narrow benefit to the regulated [parties] is likely a fee.' " *Id.*, quoting *Am. Landfill*, 166 F.3d at 837-38, citing *San Juan*, 967 F.2d at 685; *Bidart*, 73 F.3d at 932.

{¶ 44} In the case before us, we find as did the trial court that under either the *Withrow* or *Am. Landfill* analysis, the stormwater charges imposed by the City on the Property are fees–not taxes.[6] We begin with applying the four *Withrow* factors. Under the first factor, we find the assessment is imposed to address the specific issue of the necessity for the maintenance, repair, and operation of the stormwater system. Thus, consideration of this factor indicates the stormwater charges are fees.

{¶ 45} Under the second factor, as discussed previously, the stormwater fees collected by the City are kept in a special stormwater operating fund pursuant to City Code 1149.10(b)(1) and (2) and are not placed in a general fund. Further, the stormwater fees collected are not used for any purpose other than the maintenance, repair, and operation

---

[6] We observe, as the City points out in its brief, that all of the cases relied upon by Steeplechase in support of its argument that the stormwater charges imposed by the City are impermissible taxes rather than permissible fees were decided prior to *Withrow* and *Drees*. Therefore, we find those cases wholly inapplicable to the instant matter.

of the stormwater system as provided in City Code 1149.10(c)(1).  Therefore, an application

of the second factor indicates the stormwater charges are fees.

{¶ 46}  As for the third factor, we find that the stormwater charges are imposed by a

government–i.e., the City–in return for a service that government provides:  namely, the

operation and maintenance of, and the costs of improvement to, the City's stormwater

system.  We are wholly unpersuaded by Steeplechase's argument that the City has not

provided a service in exchange for its payment of the stormwater charges merely because

the City has not needed to perform any work related to the channels into which

Steeplechase's stormwater directly drains.  As the trial court aptly reasoned:

> [w]hile no work may have been necessary on the channels
> where Plaintiff's stormwater directly drains, the stormwater
> system overall must function well for each individual part to
> function.  Neglecting areas of the stormwater system could
> cause unsafe and potentially hazardous events, such as
> flooding, in other areas.  Plaintiff has not noticed any issues
> with obstruction in the flow of the channels it utilizes, which is
> due to the successful maintenance of the overall stormwater
> system.

(Decision at 11.)  Furthermore, as observed by the trial court, the City Code specifically

contemplates that a benefit is conferred upon all users directly or indirectly connected to

the stormwater system.  Section 1149.08 of the City Code provides "there is hereby

charged to each user situated within the corporate limits of the City of Columbus, that

is tributary *directly or indirectly* to the stormwater system of the city, stormwater

charges as hereinbefore provided[.]" (Emphasis added.) City Code 1149.08.  Therefore,

the lack of a need for maintenance or repair to the channels into which Steeplechase's

stormwater runoff flows does not indicate that no service has been provided to Steeplechase

by the City.  Accordingly, applying the third *Withrow* factor leads us to find the stormwater charges are fees, not taxes.

{¶ 47}  Finally, under the fourth factor, we find the stormwater charges much more closely resemble a fee rather than a tax because the stormwater charges are specifically imposed in exchange for the service of the operation and maintenance of, and the costs of improvement to, the stormwater system.  Thus, the assessment involves "a specific charge in return for a service * * *" as set forth in *Drees*. (Citation omitted.) *Drees* at ¶ 16-20. Therefore, based on the foregoing, applying the four *Withrow* factors yields the conclusion that the stormwater charges are fees, not taxes.

{¶ 48}  Similarly, in applying the *Am. Landfill* factors we are compelled to conclude that the stormwater charges more closely resemble fees rather than taxes.  Under the first factor, the stormwater charges are imposed directly by the City, as opposed to an administrative agency, supporting the possibility that the charges are taxes.  Nevertheless, under the second factor, the stormwater charges are imposed upon a narrow class of parties:  pursuant to sections 1149.05 and 1149.08 of the City Code, only owners of real property within the City who are "tributary directly or indirectly" to the City's stormwater system are assessed stormwater service charges.  As for the third and final factor, the stormwater charges are not expended for general public purposes, but are utilized only for the maintenance, repair, and operation of the stormwater system as provided in City Code 1149.10(c)(1).  Therefore, an application of the *Am. Landfill* factors results in our finding that the stormwater charges are fees, not taxes.

{¶ 49}  In sum, under either of the analyses laid out by the Supreme Court in *Drees* as aids in determining whether a given assessment is a permissible fee as opposed to an

illegal tax, we find that the stormwater charges assessed by the City against the Property are fees.  Accordingly, we overrule Steeplechase's third assignment of error.

### D. Fourth Assignment of Error

{¶ 50}  In its fourth assignment of error, Steeplechase asserts the trial court erred by finding that it was not entitled to a refund of stormwater service charges.  We disagree.

{¶ 51}  As we have determined and discussed above, Steeplechase is properly subject to Chapter 1149 of the City Code and the stormwater charges imposed upon the Property by the City were appropriately assessed pursuant to the City Code.  Therefore, Steeplechase is not entitled to a refund of stormwater charges under City Code 1149.13(B).  Accordingly, we overrule Steeplechase's fourth assignment of error.

### E. Fifth Assignment of Error

{¶ 52}  In its fifth assignment of error, Steeplechase asserts the trial court erred by finding that it was not entitled to an injunction.  We find this assertion meritless.

{¶ 53}  In general, "[t]he purpose of a preliminary injunction is to preserve a status between the parties pending a trial on the merits." *Proctor & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267 (1st Dist.2000).  A party requesting a preliminary injunction must ordinarily show that:  "(1) there is a substantial likelihood that the plaintiff will prevail on the merits, (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction." *Vineyard Christian Fellowship of Columbus v. Anderson*, 10th Dist. No. 15AP-151, 2015-Ohio-5083, ¶ 11, quoting *Stoneham* at 267.  The test for the granting or denying a permanent injunction is essentially the same as that for a preliminary injunction, "except instead of proving a substantial likelihood of prevailing on the merits, the plaintiff must prove that he has prevailed on the merits." *Id.*, citing *Great*

*Plains Exploration, LLC v. Willoughby*, 11th Dist. No. 2006-L-022, 2006-Ohio-7009, ¶ 12. A party seeking either a preliminary or permanent injunction has the burden of establishing its right to one by demonstrating clear and convincing evidence of each of the foregoing factors. *Intralot, Inc. v. Blair*, 10th Dist. No. 17AP-444, 2018-Ohio-3873, ¶ 31, citing *Youngstown City School Dist. Bd. of Edn. v. State*, 10th Dist. No. 15AP-941, 2017-Ohio-555, ¶ 50 (further citations omitted.)

{¶ 54} In this case, based on the preceding discussion and findings, Steeplechase failed to establish either a substantial likelihood of prevailing on the merits of its case or that it has prevailed on the merits. Therefore, the trial court correctly found an injunction was not appropriate and did not err in denying one. Accordingly, we overrule Steeplechase's fifth assignment of error.

## V. Disposition

{¶ 55} For the foregoing reasons, each of Steeplechase's five assignments of error are overruled. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LUPER SCHUSTER, and BRUNNER, JJ., concur.
_____