JOURNAL ENTRY AND OPINION
{¶ 1} In these consolidated[1] appeals, plaintiff-appellant, Latia Barnett-McCurdy, challenges common pleas court orders granting summary judgment in favor of RC Auto Sales, Inc. and Deano Bevelacqua (Appeal No. 90467) and Atlas Transmission (Appeal No. 90469). She asserts that genuine issues of material fact precluded summary judgment for any of these parties.
 {¶ 2} We find that, viewing the evidence in the light most favorable to appellant, there were no genuine issues of material fact and Atlas was entitled to judgment as a matter of law. Likewise, RC and Bevelacqua were entitled to judgment as a matter of law on appellant's claims for breach of contract, breach of warranty, violation of the Consumer Sales Practices Act and violation of the Magnuson-Moss Warranty Act. However, genuine issues of material fact precluded judgment for RC and Bevelacqua on appellant's tort claims. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.
 Procedural History {¶ 3} Appellant filed her complaint in this case on September 21, 2006; a second amended complaint was filed April 30, 2007. In the second amended *Page 4 
complaint, she alleged that she purchased a 1997 Cadillac Catera for $4595 from Kevin Hughley, who held himself out as a salesman and agent for appellees RC Auto Sales, Inc. and Deano Bevelacqua. She also purchased a limited warranty from the Eagle Warranty Company through Judy Simone and JB Detail, Inc. The "Buyer's Order" listed JV Auto Wholesale and/or JB Auto Wholesale as the dealer, [2] but a later "Used Vehicle Order" listed the dealer as JB Detail.
 {¶ 4} Appellant observed some "shakiness" in the vehicle when she test drove it prior to her purchase. Hughley advised her that the vehicle needed "minor repairs," which would be performed before she picked it up. She made full payment before the vehicle was delivered to her; she was not given the title. Both Hughley and Bevelacqua were present when she took delivery of the vehicle. Hughley provided her with a copy of a paid invoice from Custom Tran, presumably for repairs performed on the vehicle.
 {¶ 5} Appellant observed mechanical difficulties with the Catera and called Hughley, who told her to call Judy Simone of JB Detail. Simone told appellant to take the Catera to Atlas Transmission for repair. Atlas told appellant that the warranty she had purchased would not cover any of the *Page 5 
required repairs. Neither the Catera nor the title nor the purchase money were returned to appellant.
 {¶ 6} In section IV of her second amended complaint, appellant asserted that Hughley, Bevelacqua, and RC (as well as JV Auto Wholesale and JB Detail) engaged in fraud, intentional or negligent misrepresentation, breach of contract, breach of warranty, and violations of the Consumer Sales Practices Act and the Magnuson-Moss Warranty Act by:
 • selling her a vehicle as which they knew they could not deliver title;
 • selling a vehicle as to which they did not have and could not obtain the certificate of title;
 • selling the vehicle at a price they knew exceeded the reasonable market value by a substantial margin, so that the consumer would not receive a substantial benefit from it;
 • selling her a vehicle knowing that it had significant electrical and mechanical defects and would fail to operate
 • selling her a vehicle knowing that the mileage listed was inaccurate;
 • misrepresenting all of the above to appellant; and failing to provide her with a Buyer's Guide as required by 16 C.F.R. 455.
In section II of her complaint, appellant alleged that RC and Bevelacqua intentionally or negligently held Hughley out as their agent and therefore they were liable for Hughley's acts. In Section III, she alleged that JV Auto Wholesale and JB Detail were vicariously liable for Hughley's acts. Section V claimed Atlas Transmission failed to provide appellant with certain required disclosures, failed to inform her of her right to receive an oral or written estimate, failed to obtain her *Page 6 
authorization to make repairs, charged her for unauthorized repairs, and failed to itemize the repairs performed, as required by Ohio Admin. Code 09:4-3-13. Appellant also alleged that Atlas violated the Consumer Sales Practices Act and wrongfully exercised dominion and control over the vehicle in a manner inconsistent with her rights, and therefore converted the vehicle. Finally, section VI claimed that all defendants had caused her emotional distress.[3]
 {¶ 7} RC, Bevelacqua and Atlas all answered, denying the essential allegations of the complaint and asserting a number of affirmative defenses.
 {¶ 8} Atlas and RC and Bevelacqua filed motions for summary judgment. Attached to RC and Bevelacqua's motion was an excerpt from appellant's deposition as well as the "buyer's order" and "used vehicle order." Atlas's motion was accompanied by excerpts from the depositions of appellant and Irene Bogdan, Atlas's operations manager.[4] Atlas also included the work order signed by appellant, the unclaimed vehicle affidavit it filed with the Bureau of Motor Vehicles, its application for a certificate of title, and the certificate of title issued to it. Appellant's briefs in opposition included admissions by Hughley, appellant's affidavit, an odometer disclosure, various documents concerning the transfer of title from RC Auto Sales to Atlas, Atlas's answers to interrogatories, and an affidavit from *Page 7 
appellant's attorney concerning correspondence with Atlas's counsel. This evidence will be discussed in connection with the appellant's assignments of error.
 {¶ 9} The trial court granted both Atlas's and RC and Bevelacqua's motions on July 5, 2007. Claims against other defendants were subsequently dismissed; final judgment was entered on August 29, 2007. This appeal followed.
 Law and Analysis {¶ 10} In Appeal No. 90467, appellant urges that the court erred by granting summary judgment in favor of RC and Bevelacqua. She claims that these defendants allowed Hughley to sell vehicles from their premises, raising genuine issues of material fact whether Hughley was their apparent agent and whether they were estopped from denying that Hughley was their agent. Appellant contends that this agency relationship would have allowed these defendants to be held liable for Hughley's violations of the CSPA, the Magnuson-Moss Warranty Act "and other causes of action under tort law."
 {¶ 11} "In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." Master Consol. Corp. v. BancOhio Natl Bank (1991),61 Ohio St.3d 570, *Page 8 
syllabus. "[E]stoppel is essentially the principle that a person must compensate another for any change of position (loss) induced by reliance on what the person said or otherwise manifested, because it would be unjust to allow him to deny the truth of his words or manifestations." Id. at 577. "Under either doctrine, the principal must somehow represent to a third party, either intentionally or negligently, that the agent had authority to act on the principal's behalf." Medina Drywall Supply,Inc. v. Procom Stucco Sys., Medina App. No. 06CA0014-M, 2006-Ohio-5062, ¶ 10.
 {¶ 12} Although appellant never spoke with Bevelacqua, Bevelacqua saw Hughley escorting appellant on RC's lot and showing her vehicles. Hughley also had access to keys to allow appellant to test drive a vehicle. These facts tend to show that RC and Bevelacqua represented to appellant that Hughley was acting on their behalf. On the other hand, the fact that the contracts were made between appellant and JV or JB Auto Wholesale and JB Detail tend to show that Hughley was acting on behalf of these defendants. Thus, the relationships among Bevelacqua, RC, Hughley, JV or JB Auto Wholesale, and JB Detail present questions of fact not easily squared with the statutes governing automobile dealerships and salespersons.
 {¶ 13} The intriguing and complicated factual questions about the relationships among these defendants are not material to most of appellant's claims, however. In her deposition testimony, appellant conceded that she did not have a contract with *Page 9 
either RC or Bevelacqua.[5] Lacking any privity of contract with appellant, RC and Bevelacqua cannot be liable for breach of contract or breach of warranty under Ohio law or the Magnuson-Moss Warranty Act. SeeCurl v. Volkswagen of Am., Inc., 114 Ohio St.3d 266, 2007-Ohio-3609. Furthermore, RC and Bevelacqua did not engage in any "sale . . . or other transfer of an item of goods . . . to an individual," so they were not "suppliers" in a "consumer transaction" under the CSPA. See R.C. 1345.01(A) and (C) and 1345.02. Therefore, we overrule appellant's assignment of error and affirm the judgment in favor of RC and Bevelacqua on appellant's claims for breach of contract, breach of warranty, violation of the CSPA and violation of the Magnuson-Moss Warranty Act.
 {¶ 14} The parties barely mentioned, much less addressed, appellant's tort claims for fraud, misrepresentation, and emotional distress. No contractual relationship is necessary to pursue these claims. As noted above, there are genuine issues of fact whether Hughley was acting as an agent for RC and *Page 10 
Bevelacqua, and therefore, whether they may be liable for his tortious conduct.
Groob v. Keybank, 108 Ohio St.3d 348, 2006-Ohio-1189, ¶ 42.
 {¶ 15} Accordingly, we affirm the judgment in favor of RC and Bevelacqua in part and reverse it in part and remand for further proceedings on appellant's tort claims.
 {¶ 16} In Appeal No. 90469, appellant contends that the evidence demonstrates that Atlas converted her vehicle and violated the Consumer Sales Practices Act. "Conversion is the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner. In order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. The measure of damages in a conversion action is the value of the converted property at the time it was converted." Tabar v. Charlie's Towing Serv. (1994),97 Ohio App.3d 423, 427-28 (citations omitted).
 {¶ 17} Appellant's testimony shows that she never received a certificate of title to the Catera. After she learned that there were problems with the Catera's transmission, she called Hughley, who instructed her to call Simone. Simone, in turn, instructed appellant to contact Irene Bogdan at Atlas. The Catera stopped operating on the way to Atlas; appellant had to have it towed into Atlas's garage. Bogdan indicated that they would run diagnostic tests and appellant agreed. *Page 11 
Bogdan later called appellant to inform her that there was a problem with the transmission, and the warranty would not cover it. Appellant did not authorize Atlas to do any work. Instead, she called Hughley and told him that she wanted her money back. Hughley repeatedly assured her that "we'll take care of it."
 {¶ 18} Ms. Bogdan testified that the vehicle was left on Atlas's premises and no one called about it, so she filed an unclaimed vehicle affidavit with the Bureau of Motor Vehicles. She learned through the Bureau of Motor Vehicles that RC was the title owner. She did not contact appellant or her husband or Hughley and tell them to come and pick up the vehicle. After Atlas obtained title, Atlas installed a rebuilt transmission in the Catera.
 {¶ 19} The evidence demonstrates that appellant was not the title owner of the vehicle but Atlas was, so appellant cannot claim that Atlas converted her property to its own use. Whatever equitable rights appellant may have had as against Hughley and any other person or entity involved in selling her the Catera, she did not acquire any right, title or interest in or to the vehicle because she never received the certificate of title. R.C. 4505.04(A); Saturn of Kings Automall, Inc. v.Mike Albert Leasing, Inc. 92 Ohio St.3d 513, 520, 2001-Ohio-1274. On the other hand, Atlas did obtain a certificate of title to the vehicle from RC, the title owner, through an unclaimed vehicle affidavit before it performed repairs on the vehicle. Rucker v. Alston, Montgomery App. No. 19959, 2004-Ohio-2428, is inapposite; unlike Atlas, *Page 12 
the defendant in that case did not have title or any better claim to the vehicle than the plaintiff. Consequently, appellant has no claim for conversion against Atlas.
 {¶ 20} Appellant claims Atlas violated the Consumer Sales Practices Act by failing "at the time of the initial face to face contact and prior to the commencement of any repair or service [where the anticipated cost exceeds twenty-five dollars], to provide the consumer with a form which indicates the dates, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated completion date and, if requested by the consumer, the anticipated cost of the repair or service." Ohio Admin. Code 109:4-3-13. The only service Atlas performed for appellant was the diagnostic test; there is no evidence that there was any charge for this. Appellant did not request any repairs, and none were performed on her behalf. Repairs were only made after title was transferred to Atlas. Therefore, this provision is inapplicable.
 {¶ 21} Accordingly, we affirm the judgment in favor of Atlas. We further affirm the judgment in favor of RC and Bevelacqua on appellant's claims for breach of contract, breach of warranty, violation of the CSPA, and violation of the Magnuson-Moss Warranty Act. However, we reverse the judgment in favor of RC and Bevelacqua on appellant's tort claims and remand for further proceedings on those claims.
It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 13 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, JUDGE
MARY J. BOYLE, J., CONCURS SEAN C. GALLAGHER, P.J., CONCURS IN PART AND DISSENTS IN PART (SEE ATTACHED CONCURRING IN PART AND DISSENTING IN PART OPINION)
[1] Despite our order to file a consolidated brief, appellant filed separate briefs in the two appeals, substantially defeating one of the purposes of the consolidation order. Nevertheless, we address the two appeals together, because they arise from a single series of related transactions. See Loc. App. R. 3(C)(1) of the Eighth District Court of Appeals.
[2] Simone, JB Detail, Eagle Warranty, JV Auto Wholesale and JB Auto Wholesale were also defendants in the underlying action. They are not parties to this appeal.
[3] The second amended complaint also asserted claims against Simone, JB Auto Detail, and Eagle Warranty not relevant to this appeal.
[4] The complete transcripts of both appellant's and Bogdan's depositions were filed separately with the court.
[5] There is no evidence (or even an allegation) that JV or JB Auto Wholesale and/or JB Detail were acting as agents for RC and Bevelacqua, so that their contractual relationship to appellant could be attributed to RC and Bevelacqua. Any multiple agency relationships among (1) Hughley, (2) R C and Bevelacqua, and (3) JV or JB Auto Wholesale and/or JB Detail, would raise serious concerns under the Ohio statutes governing automobile dealers. A dealer cannot be licensed to work as the salesperson for another dealer. R.C. 4517.14(F). Furthermore, a dealer must generally work from an established place of business devoted exclusively to the purpose of selling vehicles, and more than one dealer generally cannot share business premises. R.C. 4517.03 and 4517.24. The relationship between an automobile dealer and a salesperson is exclusive: a dealer generally may not sell vehicles through anyone other than a licensed salesperson, and a licensed salesperson can only work for one dealer at a time. R.C. 4517.14(E) and4517.20.