**[Cite as *Smith v. McDiarmid*, 2022-Ohio-2151.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Robbie Smith, | : | |
| Plaintiff-Appellant, | : | No. 21AP-199 |
| | | (C.P.C. No. 17CV-3704) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| David M. McDiarmid et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 23, 2022

**On brief:** *Law Offices of James P. Connors*, and *James P. Connors*, for appellant. **Argued:** *James P. Connors.*

**On brief:** *Freeman, Mathis & Gary, Elisabeth D. Gentile, Cara M. Wright*, and *Chenee Castruita*, for appellees. **Argued:** *Chenee Castruita.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Robbie Smith, appeals from a judgment of the Franklin County Court of Common Pleas denying his motion for summary judgment and granting summary judgment in favor of defendants-appellees, Wynn's Extended Care, Inc. ("Wynn's"), and National Casualty Company ("National Casualty") (collectively, "Wynn's Defendants"). For the following reasons we affirm in part and reverse in part.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The events leading to this appeal began with Smith's purchase of a used Ford F-250 truck ("the truck") from Nu-Wave Auto Center ("Nu-Wave"). Nu-Wave is a used-car dealership in Fremont, Ohio, owned and operated by David M. McDiarmid ("David

Senior"), Susan McDiarmid ("Susan"), and their son, David L. McDiarmid ("David") (collectively, "the Nu-Wave Defendants"). Generally, David Senior is responsible for "all the buying and * * * upkeep on the cars," David handles "sales and financial," and Susan is the "closer" who "finishes up the paperwork in the back office and has people sign, explains the contract to them." (Dec. 13, 2018 David L. McDiarmid Dep. at 14.)

{¶ 3} Smith first saw the truck on the Nu-Wave lot in mid-September 2016. The truck had custom-made shocks, added traction bars, and "about 4,000 dollars' worth of rims and tires on it." (Dec. 13, 2018 Smith Dep. at 36.) Smith returned to the Nu-Wave lot approximately a week later and talked with David about buying the truck. When he was allowed to look under the hood of the truck, Smith saw "a pretty blue Cool Air Tube on it and a big cold air filter" that he believed were not original components. (Smith Dep. at 40-41.) Based on what he could see of the truck, Smith believed it had been modified from its original factory condition.

{¶ 4} Smith ultimately returned to Nu-Wave on September 24, 2016, to purchase the truck. Smith claimed David told him "[y]ou're not buying this truck without buying a warranty. That way our butts are covered." (Smith Dep. at 43.) Smith took this to mean "the sale wasn't going to happen without the purchase of the warranty." (Smith Dep. at 43-44.) Smith claimed David told him the "warranty" would cover a potential breakdown of certain parts on the truck, including the turbocharger.

{¶ 5} Once Smith agreed to purchase the truck, Susan reviewed the sale documents with him on a laptop computer. Smith electronically signed a retail installment contract, providing for purchase of the truck, with financing through Credit Acceptance Corporation. Smith agreed to pay $26,475 for the truck, plus $5,585.50 in sales taxes, charges, and other fees; Smith made a cash and trade-in down payment of $9,500 and financed the remaining balance of $22,560.50. As part of the purchase, Smith also electronically completed an application for a vehicle service contract ("VSC Application") with Wynn's to cover the cost of repairs in the event of a breakdown of certain parts on the truck. In his deposition, Smith noted that the text of the VSC Application was small but acknowledged he could have reviewed it at the time of purchase if he wished. Smith paid $2,463 for the vehicle service contract, which was included in the amount he financed. The VSC Application indicated

the contract was insured under a policy issued by National Casualty, and that Smith could submit a claim to National Casualty if Wynn's refused to settle a repair claim.

{¶ 6} Twelve days after Smith purchased the truck, it broke down while he was driving it. The truck was ultimately towed to a repair shop in Columbus, Ohio, for inspection and repair. The estimated repair cost was more than $23,000; Smith filed a claim with Wynn's to cover the estimated repair costs. Wynn's sent an independent inspector to the repair shop; the inspector determined the breakdown was caused by failure of the truck's turbocharger. The inspector also noted that the truck had numerous modifications. Wynn's denied Smith's claim, asserting the truck was ineligible for a vehicle service contract because it had been modified.

{¶ 7} Smith filed a complaint against the Nu-Wave Defendants, Wynn's, Phoenix American Warranty,[1] and National Casualty, asserting claims for violation of the Ohio Consumer Sales Practices Act ("CSPA"), negligent or intentional misrepresentation, and breach of contract. Following discovery, Smith, the Nu-Wave Defendants, and the Wynn's Defendants, filed motions for summary judgment. The trial court denied Smith's motion for summary judgment against the Wynn's Defendants and granted the Wynn's Defendants' motion for summary judgment on all of Smith's claims against them. The trial court also denied in part and granted in part Smith's motion for summary judgment against the Nu-Wave Defendants.[2] Smith timely appealed the trial court's decision.

## II. ASSIGNMENTS OF ERROR

{¶ 8} Smith assigns the following as trial court error:

> 1. The trial court erred by denying appellant Robbie Smith's motion for summary judgment against defendants Wynn's Extended Care Inc. and National Casualty Company.
>
> 2. The trial court erred by granting appellees Wynn's Extended Care Inc. and National Casualty Company's motion for summary judgment.
>
> 3. The trial court erred by finding that a warranty contract was not formed between appellant Robbie Smith and appellees Wynn's Extended Care Inc. and National Casualty Company.

---

[1] The trial court ultimately granted judgment on the pleadings in favor of Phoenix American Warranty on August 16, 2018. Smith does not challenge that judgment in the present appeal.

[2] Smith subsequently reached a settlement agreement with the Nu-Wave Defendants; those parties stipulated to dismissal of Smith's claims against the Nu-Wave Defendants pursuant to Civ.R. 41(A)(1).

4. The trial court erred by finding, alternatively, that appellees Wynn's Extended Care Inc. and National Casualty Company did not breach the warranty contract with appellant Robbie Smith.

5. The trial court erred by finding that appellees Wynn's Extended Care Inc. and National Casualty Company did not violate the Ohio Consumers Sales Practices Act.

6. The trial court erred by finding that the McDiarmids and/or NuWave Auto were not an agent of appellees Wynn's Extended Care Inc. and National Casualty Company by express, implied, or apparent authority for purposes of the transaction with appellant Robbie Smith.

## III. STANDARD OF REVIEW

{¶ 9}   The trial court granted summary judgment in favor of the Wynn's Defendants on all Smith's claims.   Summary judgment is appropriate when the moving party demonstrates "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Capella, III, LLC v. Wilcox*, 190 App.3d 133, 2010-Ohio-4746, ¶ 16  (10th Dist.). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11.  If the moving party meets its burden, the non-moving party must set forth specific facts establishing a genuine issue for trial.  *Id.*

{¶ 10} "Appellate review of a trial court's ruling on a motion for summary judgment is de novo." *You v. Northeast Ohio Med. Univ.*, 10th Dist. No. 19AP-733, 2020-Ohio-4661, ¶ 12.  We conduct an independent review without deference to the trial court's decision.  *Id.* "In reviewing a motion for summary judgment, we must construe all evidence in a light in favor to the non-moving party."  *Id.* at ¶ 13.

## IV. LEGAL ANALYSIS

{¶ 11} Smith's first assignment of error challenges the trial court's denial of his motion for summary judgment and his second through fifth assignments of error challenge

the trial court's grant of summary judgment for the Wynn's Defendants. We begin, however, with Smith's sixth assignment of error, which raises the issue of whether the Wynn's Defendants could have been liable for the acts or representations of the Nu-Wave Defendants.

## A. Whether the Nu-Wave Defendants were agents of the Wynn's Defendants

{¶ 12} In Smith's sixth assignment of error, he argues the trial court erred by concluding there was no agency relationship between the Nu-Wave Defendants and the Wynn's Defendants. The trial court determined there was no agency relationship because the Wynn's Defendants did not grant any express or implied authority to the Nu-Wave Defendants to act as their agents. The trial court also concluded the Nu-Wave Defendants did not have apparent authority to act on behalf of the Wynn's Defendants.

{¶ 13} " 'Agency is the relationship that results when one party agrees to another person or entity's acting on its behalf.' " *Weigand & Son Corp. v. Matrix Realty Group*, 10th Dist. No. 13AP-836, 2014-Ohio-2503, ¶ 10, quoting *Mtge. Network, Inc. v. Ameribanc Mtge. Lending, L.L.C.*, 177 Ohio App.3d 733, 2008-Ohio-4112, ¶ 12 (10th Dist.). An agency relationship may be created by an express grant of authority from the principal. *Master Consol. Corp. v. Bancohio Natl. Bank*, 61 Ohio St.3d 570, 574 (1991). Absent an express grant of authority, an agency relationship may arise from an implied or apparent grant of authority. *Id.* "Whether an agency relationship exists is a question of fact, rather than a question of law." *SuperMedia, L.L.C. v. Blue + Blue, L.L.C.*, 10th Dist. No. 12AP-620, 2013-Ohio-1252, ¶ 10.

### 1. Whether agency relationship was created by an express grant of authority

{¶ 14} "Express authority is that authority which a principal directly grants or confers upon an agent in express terms." *Southard Supply, Inc. v. Anthem Contrs., Inc.*, 10th Dist. No. 16AP-545, 2017-Ohio-7298, ¶ 17, citing *Master Consol.* at 574. Wynn's entered into a dealer agreement with David Senior and David authorizing them to sell Wynn's vehicle service contracts. The dealer agreement expressly stated the McDiarmids were not employees or agents of Wynn's and that the dealer agreement was not to be construed to make the McDiarmids employees or agents of Wynn's. The dealer agreement further provided that the McDiarmids had no authority to create any contract on behalf of

Wynn's or incur any liability on its behalf. Based on these terms in the dealer agreement, the trial court did not err by concluding there was no express authority creating an agency relationship between Wynn's and the Nu-Wave Defendants. *See Cincinnati Golf Mgt., Inc. v. Testa*, 132 Ohio St.3d 299, 2012-Ohio-2846, ¶ 25 ("In this case, the contract between the parties expressly disclaims agency with respect to any of the activities that CGMI conducts pursuant to its terms. Thus, there is no actual or express authority to bind the city to purchases made by CGMI."); *Southard Supply* at ¶ 17-18 (concluding there was no express authority for an individual to use a corporate credit account because the credit account contract included an approved users list naming two different individuals and indicated that approval was required for any other user, and there was no evidence such approval was given).

{¶ 15} There was no direct relationship between National Casualty and the Nu-Wave Defendants; National Casualty was simply an insurer of the vehicle service contract. Thus, there is nothing in the record indicating any express grant of authority from National Casualty to the Nu-Wave Defendants. Accordingly, the trial court did not err by concluding there was no express authority creating an agency relationship between National Casualty and the Nu-Wave Defendants.

## 2. Whether agency relationship was created by apparent authority

{¶ 16} In the absence of an express grant of authority, an agency relationship may arise through apparent authority. *Master Consol.* at 574. A principal may be bound by an agent's acts due to apparent authority when "the principal held the agent out to the public as possessing sufficient authority to act on his behalf" and "the person dealing with the agent knew these facts, and acting in good faith had reason to believe that the agent possessed the necessary authority." *Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, ¶ 41. The agent's authority is "determined by the acts of the principal rather than by the acts of the agent." *Id.* "The principal is responsible for the agent's acts only when the principal has clothed the agent with apparent authority and not when the agent's own conduct has created the apparent authority." *Id.*

{¶ 17} The trial court concluded Smith had no good faith reason to believe the Nu-Wave Defendants had authority to act on behalf of the Wynn's Defendants because the VSC Application stated it was an application for a contract that would become complete upon

acceptance by Wynn's and that acceptance was within Wynn's discretion. The trial court further noted that David signed the VSC Application as the representative of the selling dealer, i.e., Nu-Wave, not as the representative of the administrator, i.e., Wynn's.

{¶ 18} Initially, we note there is nothing in the record to establish that National Casualty held the Nu-Wave Defendants out to the public as having sufficient authority to act on its behalf. National Casualty was only named as an insurer of the vehicle service contract on the VSC Application. Therefore, the trial court did not err by concluding there was no apparent authority creating an agency relationship between National Casualty and the Nu-Wave Defendants.

{¶ 19} Turning to the question of whether the Nu-Wave Defendants had apparent authority to act on behalf of Wynn's, we must consider Wynn's conduct. *Martin* at ¶ 41; *see also Am. Outdoor Advertising Co., L.L.C. v. P&S Hotel Group, Ltd.*, 10th Dist. No. 09AP-221, 2009-Ohio-4662, ¶ 39 ("Thus, considering whether Tackett had apparent authority to bind P&S requires us to look at P&S's conduct, not Tackett's.").

{¶ 20} Wynn's entered into a dealer agreement with David Senior and David, authorizing the McDiarmids to sell Wynn's vehicle service contracts. Under the dealer agreement, the McDiarmids were authorized to sell service contracts only on eligible vehicles and prohibited from making representations about coverage beyond the statements contained in the service contract. There was disputed evidence about the McDiarmids' role in determining whether a vehicle was eligible for a service contract. Matthew Brooks, who was deposed as a representative of Wynn's under Civ.R. 30(B)(5), testified that determination of whether a vehicle had been modified and therefore was ineligible for a service contract was "supposed to have been done prior to offering it for sale." (Nov. 19, 2018 Brooks Dep. at 95.) Although Brooks asserted Wynn's ultimately determined whether a vehicle was eligible for coverage under a service contract, he also stated that "[t]he dealership is supposed to make sure that the car [sic] is not sold on something outside of what is generally considered an eligible vehicle." (Brooks Dep. at 96.) Brooks asserted the McDiarmids should have known the truck was not eligible for a service contract due to visible and obvious modifications. Brooks' testimony suggests Wynn's conferred some level of authority to the McDiarmids in determining whether a service contract could be sold on a particular vehicle. Both David and Susan testified Wynn's had

never sent a representative to Nu-Wave to explain its products or any exclusions. In contrast to Brooks' testimony, David claimed it would "show up automatically" if a vehicle was eligible for a vehicle service contract, suggesting that the McDiarmids were not responsible for making that determination. (David Dep. at 76.)

{¶ 21} The evidence about the McDiarmids' role in processing and completing the VSC Application was also disputed. Wynn's provided the VSC Application to Credit Acceptance to be used by dealers who had entered into a dealer agreement with Wynn's. Susan claimed the information contained in the VSC Application was generated by Credit Acceptance through an online portal. Brooks agreed the VSC Application was completed electronically but asserted Wynn's did not provide any software to dealers for purposes of completing or executing the VSC Application. Brooks' testimony suggested that the McDiarmids were responsible for ensuring the details in the VSC Application were correct.

{¶ 22} We also consider the content of the VSC Application, which Wynn's authorized for use to sell its vehicle service contracts. The VSC Application indicated it would become the parties' contract if it was accepted by Wynn's but did not clearly indicate how acceptance occurred or would be communicated to the buyer. The signature portion of the VSC Application was set out in a separate box, with the term "CONTRACT OBLIGOR[3] (We, Us or Our): Administrator" above it, followed by language agreeing to the terms of the application. Immediately below that paragraph were spaces for the customer and the "authorized representative of selling dealer"[4] to sign. There was no additional space on the VSC Application for a signature from a representative of Wynn's. Thus, the copy of the VSC Application given to Smith when after purchasing the truck contained only Smith and David's signatures.

{¶ 23} Smith testified David told him "[y]ou're not buying this truck without buying a warranty" which he took to mean "that the sale wasn't going to happen without the purchase of the warranty." (Smith Dep. at 43-44.) Smith claimed David referred to the coverage as a warranty rather than a service contract and told him it would cover a

---

[3] The VSC Application defines the term "contract obligor" to be the "administrator," which is defined as Wynn's Extended Care, Inc.

[4] The VSC Application defines the term "selling dealer" as the automobile dealer identified on the first page of the VSC Application, i.e., in this case, David. M. McDiarmid and David L. McDiarmid.

breakdown of parts on the truck, including the turbocharger, for 24 months or 24,000 miles. Smith believed he was buying the "warranty" through Nu-Wave but not from Nu-Wave; he understood that the warranty or service contract was from Wynn's. Smith claimed that when he signed the VSC Application he was not aware of the exclusions relating to modifications. After the truck broke down, Smith called Nu-Wave; David or Susan told Smith that the repairs should have been covered under the Wynn's service contract.

{¶ 24} Construing the disputed evidence in the light most favorable to Smith, as the non-moving party, we conclude there was a genuine issue of material fact as to whether Wynn's held the McDiarmids out to the public as having sufficient authority to enter into vehicle service contracts on its behalf and whether Smith had reason to believe the McDiarmids had such authority. *See Am. Outdoor Advertising* at ¶ 39 ("As a genuine issue of material fact remains with regard to Tackett's apparent authority to bind P&S to the agreements, this matter may not be resolved, as a matter of law, by summary judgment, and the trial court erred in doing so."). Because there was a genuine issue of material fact as to whether the McDiarmids had apparent authority to act on behalf of Wynn's, the trial court erred by concluding as a matter of law that the Nu-Wave Defendants were not agents of Wynn's.

{¶ 25} We conclude the trial court erred by concluding as a matter of law that there was no agency relationship with Wynn's but did not err by concluding there was no agency relationship with National Casualty; therefore, we sustain in part and overrule in part Smith's sixth assignment of error.

### B. Whether the trial court erred by denying Smith's motion for summary judgment and granting the Wynn's Defendants' motion for summary judgment

{¶ 26} In his first assignment of error, Smith asserts the trial court erred by denying his motion for summary judgment against the Wynn's Defendants. "Ordinarily, a denial of a motion for summary judgment is not a final appealable order, but where the matter is submitted upon cross-motions and a final judgment was entered against the appellant, an appellate court properly may review the denial of the cross-motion." *DeAscentis v. Margello*, 10th Dist. No. 04AP-4, 2005-Ohio-1520, ¶ 25 . *See also Tower 10, LLC v. 10 W. Broad Owner, LLC*, 10th Dist. No. 18AP-998, 2020-Ohio-3554, ¶ 44 (citing *DeAscentis*).

Accordingly, because the trial court also granted summary judgment in favor of the Wynn's Defendants, we may review its denial of Smith's motion for summary judgment.

{¶ 27} In his second assignment of error, Smith generally asserts the trial court erred by granting summary judgment in favor of the Wynn's Defendants. Smith's third through fifth assignments of error challenge specific aspects of the summary judgment decision—i.e., the third and fourth assignments of error assert the trial court erred by granting summary judgment in favor of the Wynn's Defendants on Smith's breach of contract claim and the fifth assignment of error asserts the trial court erred by granting summary judgment in favor of the Wynn's Defendants on his CSPA claim. In considering whether the Wynn's Defendants were entitled to summary judgment, we will begin with the specific claims set forth in Smith's third through fifth assignments of error.

### 1. Whether the Wynn's Defendants were entitled to summary judgment on Smith's breach of contract claim

{¶ 28} The trial court granted summary judgment on Smith's breach of contract claim against the Wynn's Defendants because it concluded there was no contract formed. The court reasoned that the VSC Application was not a contract until it was accepted by Wynn's, and that Wynn's cancelled the application without accepting it when it learned the truck had been modified. Alternatively, the trial court concluded that even if there was a contract, the Wynn's Defendants did not breach the contract because the VSC Application excluded coverage for modified vehicles.

{¶ 29} In his third assignment of error, Smith asserts the trial court erred by concluding there was no contract formed between Smith and the Wynn's Defendants. In his fourth assignment of error, Smith asserts the trial court erred by concluding the Wynn's Defendants did not breach their contract with Smith. We begin with the latter issue because we find it to be dispositive as to Smith's breach of contract claim.

{¶ 30} The elements of a breach of contract claim are (1) existence of a contract, (2) performance by the plaintiff, (3) non-performance by the defendant, and (4) damage or loss to the plaintiff. *Gianetti v. Teakwood, Ltd.*, 10th Dist. No. 15AP-413, 2016-Ohio-213, ¶ 12. To survive a motion for summary judgment, a plaintiff must produce some evidence to support each element of the claim for breach of contract. *Grubach v. Univ. of Akron*, 10th Dist. No. 19AP-283, 2020-Ohio-3467, ¶ 23.

{¶ 31} Smith asserts the Wynn's Defendants breached the service contract by denying the claim he submitted for repairs to the truck. Smith argues this constituted a breach because the truck's breakdown was not caused by a modification and, therefore, the repairs should have been covered under the service contract. The Wynn's Defendants argue there was no breach because the terms of the contract excluded any coverage for modified vehicles. The trial court concluded that, if there was a contract, the Wynn's Defendants were entitled to summary judgment on the breach of contract claim because the VSC Application excluded modified vehicles and Smith admitted the truck contained modifications at the time he purchased it.

{¶ 32} The purpose of contract interpretation is to determine the parties' intent, which is "generally reflected in the language utilized in the agreement." *You* at ¶ 15. If the terms of a contract are clear and unambiguous, the court need look no further than those terms. *Id.* "When determining the parties' intent in the language of the contract, a reviewing court must read the contract as a whole and give effect, when possible, to every provision in the agreement." *Id.* at ¶ 16.

{¶ 33} The VSC Application provides that, if accepted by Wynn's, it would become the contract, thus we look to the terms of the VSC Application to determine the parties' intent. The VSC Application contains various exclusions under which no benefits or coverage would be provided. Section (A)(6) of the exclusions states that the contract provides no benefits or coverage for "A Breakdown caused by or involving modifications or additions to Your Vehicle unless those modifications or additions were performed or recommended by the Vehicle Manufacturer." (VSC Application at 3, Ex. B to Compl.) Additionally, Section (B)(6) of the exclusions states that the contract provides no benefits or coverage if "Your Vehicle is modified from the Vehicle Manufacturer's original specifications." (VSC Application at 3, Ex. B. to Compl.)

{¶ 34} The plain language of Section (B)(6) of the VSC Application excludes coverage for modified vehicles. Smith admitted he "absolutely could have" reviewed the provisions of the VSC Application before signing it. (Smith Dep. at 60.) It is undisputed that the truck was modified from its original condition when Smith purchased it. Smith testified that before buying the truck he knew that, among other items, "it had a pretty blue Cool Air Tube on it and a big cold air filter" and that someone had "tore all that factory black

plastic stuff out, and they put in this shiny blue aluminum tube." (Smith Dep. at 40-41.) Smith further testified that when he was told Wynn's would not pay for the repair claim because the truck was modified, he responded, "[o]f course it's modified; I bought it that way." (Smith Dep. at 80.) It is also undisputed that Wynn's denied the repair claim because the vehicle was modified. Brooks testified that "the modifications would lead to a denial under multiple places in the service contract." (Brooks Dep. at 46.)

{¶ 35} Because the VSC Application excludes coverage for modified vehicles and there is no dispute that the truck was modified when Smith purchased it, Wynn's did not breach the contract by refusing to cover Smith's repair claim. Likewise, National Casualty did not breach its obligations by failing to cover an excluded claim. Absent a breach or non-performance, Smith cannot establish one of the elements of his breach of contract claim. Accordingly, there is no genuine issue of material fact and the Wynn's Defendants are entitled to judgment as a matter of law on that claim. Therefore, we overrule Smith's fourth assignment of error.

{¶ 36} In his third assignment of error, Smith argues the trial court erred by concluding there was no contract formed between him and the Wynn's Defendants. We need not reach this issue, because, as explained above, we conclude that even if a contract existed, the Wynn's Defendants were entitled to judgment as a matter of law on Smith's breach of contract claim. Accordingly, we dismiss as moot Smith's third assignment of error.

### 2. Whether the Wynn's Defendants were entitled to summary judgment on Smith's CSPA claim

{¶ 37} In his fifth assignment of error, Smith asserts the trial court erred by concluding that the Wynn's Defendants did not violate the Ohio Consumer Sales Practices Act. The CSPA prohibits unfair or deceptive acts or practices and unconscionable acts or practices in connection with consumer transactions. R.C. 1345.02(A), 1345.03(A). The trial court concluded Wynn's did not violate the CSPA because the only representations it made were those contained in the VSC Application, which expressly stated that modified vehicles were excluded. The trial court similarly concluded National Casualty did not violate the CSPA because the only possible representation it made was the statement that VSC Application was insured under a policy issued by National Casualty and that the buyer could make a claim against National Casualty if Wynn's did not settle a claim.

{¶ 38} The trial court further concluded that because there was no agency relationship between the Wynn's Defendants and the Nu-Wave Defendants, the Wynn's Defendants could not be liable for any CSPA violations committed by the Nu-Wave Defendants.[5] However, as explained in our analysis of Smith's sixth assignment of error, we conclude there was a genuine issue of material fact as to the existence of an agency relationship between Wynn's and the McDiarmids. Therefore, the trial court erred by granting summary judgment in favor of Wynn's on Smith's CSPA claim without considering whether Wynn's could be liable for any CSPA violations committed by the Nu-Wave Defendants by virtue of an agency relationship.[6] Because National Casualty was only named as an insurer in the VSC Application and there was no agency relationship between National Casualty and the Nu-Wave Defendants, the trial court did not err by granting summary judgment in favor of National Casualty on Smith's CSPA claim. Accordingly, we sustain in part and overrule in part Smith's fifth assignment of error.

### 3. Whether the Wynn's Defendants were entitled to summary judgment on Smith's misrepresentation claim

{¶ 39} Although Smith does not present an individual assignment of error arguing the trial court erred by granting summary judgment in favor of the Wynn's Defendants on his misrepresentation claim, that argument arises in the context of his first and second assignments of error.

{¶ 40} The trial court's reasoning on Smith's misrepresentation claim was similar to the CSPA claim—i.e., the court concluded that the Wynn's Defendants did not make any misrepresentations because their only direct representations to Smith were the statements contained in the VSC Application. For the same reasons stated above, we agree with respect to National Casualty. With respect to Wynn's, however, because it found no agency relationship, the trial court failed to consider whether Wynn's could have been liable for any misrepresentations made by the Nu-Wave Defendants. Because we conclude the trial court erred by concluding as a matter of law that there was no agency relationship, we

---

[5] We note that the trial court found Smith was entitled to summary judgment on his CSPA claim against the Nu-Wave Defendants.

[6] We also note that the trial court did not evaluate possible tension between "Exclusion" section (A)(6) of the VSC Application (limiting the "modifications" exclusion to breakdowns "caused by or involving" the modifications) and section (B)(6) (seemingly obviating that limitation).

further conclude the trial court erred by granting summary judgment in favor of Wynn's on the misrepresentation claims. *See Barnett-McCurdy v. Hughley*, 8th Dist. No. 90467, 2008-Ohio-4874, ¶ 14 (concluding there were genuine issues of material fact whether individual acted as an agent for purported principals and, therefore, whether purported principals could be liable on claims for fraud, misrepresentation, and emotional distress).

{¶ 41} As explained above, we conclude the trial court did not err by granting summary judgment in favor of the Wynn's Defendants on Smith's breach of contract claim or in favor of National Casualty on Smith's CSPA and misrepresentation claims. However, the trial court erred by granting summary judgment in favor of Wynn's on Smith's CSPA and misrepresentation claims because it failed to consider whether Wynn's may have been liable for the acts or representations of the Nu-Wave Defendants. Because the trial court erred by granting summary judgment in favor of Wynn's on Smith's CSPA and misrepresentation claims, we sustain in part and overrule in part Smith's second assignment of error. Finally, based on our review of the evidence, we conclude Smith failed to demonstrate he was entitled to summary judgment on any of his claims; therefore, we overrule Smith's first assignment of error.

## V. CONCLUSION

{¶ 42} For the foregoing reasons, we overrule Smith's first and fourth assignments of error, overrule in part and sustain in part his second, fifth, and sixth assignments of error, and dismiss as moot his third assignment of error. We affirm the judgment of the Franklin County Court of Common Pleas as to Smith's breach of contract claim and as to his CSPA and misrepresentation claims against National Casualty; we reverse the trial court's judgment as to Smith's CSPA and misrepresentation claims against Wynn's. We remand this matter to that court further proceedings consistent with law and this decision.

*Judgment affirmed in part*
*and reversed in part;*
*cause remanded.*

JAMISON, and NELSON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under the authority of the Ohio Constitution,
Article IV, Section 6(C).

_____